RECEIVED

*Filed*

# IN THE
# UNITED STATES DISTRICT COURT

for the

## Middle District of Florida

CRAIG BRADLEY PATTERSON; )

———————————————————— )

*Plaintiff* )

v. )

STANLEY A SINN; )
JANAHN J SINN; )
S & J CLASSIC DEVELOPMENTS, LLC. )

————————————————— / )

*Defendant(s)* )

2:21-CV-670 JLB-NPM

Case No.:

**DEMAND FOR JURY TRIAL**

---

### COMPLAINT AND DEMAND FOR JURY TRIAL

WAGE THEFT, IN THE ALTERNATIVE BREACH OF CONTRACT, BREACH OF ORAL EMPLOYMENT CONTRACT, UNJUST ENRICHMENT, QUANTUM MERUIT, PROMISSORY ESTOPPEL, NEGLIGENCE AND GROSS NEGLIGENCE, NEGLIGENT MISREPRESENTATION, FRAUDULENT MISREPRESENTATION SPECIFIC PERFORMANCE, FAIR LABOR STANDARDS ACT, MINIMUM WAGE ACT VIOLATION OF THE FLORIDA CONSTITUTION,

---

Plaintiff, Craig Bradley Patterson, and is otherwise, *sui juris* (hereinafter, "Plaintiff"), by and as representative, states as follows, for its complaint against the chicanery of Defendant, primarily Stanley A. Sin (sic), herein after ("Defendant Sinn"), and is otherwise, perhaps *sui juris* alleges and states as follows:

## THE PLAINTIFF

1.      Plaintiff, Craig Bradley Patterson, an individual United States citizen, residing in Collier County, Florida.

## THE DEFENDANTS

2.      Plaintiff hereby realleges and incorporates by reference the Plaintiff in paragraph 1 as though fully set forth in this cause of action.

3.      Defendant, Stanley A Sin (sic) ("Defendant Sinn"); an individual United States citizen, residing in Lee County, Florida;

4.      Defendant, Janahn J Sinn; an individual United States citizen, residing in Lee County, Florida;

5.      Defendant, S & J Classic Developments, llc.; a Florida Foreign Limited Liability Company with authorization to transact business in Lee County, The Great State of Florida, United States.

6.      At all times relevant to this action, Defendant Sinn, including those fictitiously named, was the trustee, agent, servant, employer, employee, member, managing member, partner, joint venture, or surety of the other was acting within the scope of said agency, employment, partnership, venture, or suretyship, with the knowledge and consent or ratification of each of the other.

7.      Upon information and belief, at all relevant times, Defendant Sinn, et al were individuals who actively participated in the business of S & J Classic Developments, llc, exercised substantial, if not all control over the functions of the employees of Defendant Sinn, including the Plaintiff, and Plaintiffs workers, and acted directly or indirectly in the interest of an employer.

8.      Upon information and belief, at all relevant times, Defendant Sinn had the capacity on behalf of Janahn J Sinn and, S & J Classic Developments, llc.to establish the wages and hours of the employees of Defendant Sinn, Janahn J Sinn and, S & J Classic Developments.

9.      The Defendants supervised and controlled, or at least had the power and authority to control, Plaintiffs work schedules, workers, conditions of employment, and the rate and method of payment.

## JURISDICTION AND VENUE

10.     Plaintiff hereby realleges and incorporates by reference the jurisdictions and allegations in paragraphs 1 through 9 as though fully set forth in this cause of action.

11.     Venue in the Twentieth Judicial Circuit Court in and for Lee County, Florida is proper because the property, and work performed at the property at issue is located in the City of Bonita Springs, County of Lee County Florida.

12.     Venue in this County Court of the Twentieth Judicial Circuit in and for Lee County, Florida is proper because Defendants resides in, and all the events giving rise to Plaintiff's claim arose in Bonita Springs, County of Lee County.

13.     Venue properly lies in this Judicial District under 28 U.S.C. § 1391(b), because Defendants resides in, and all the events giving rise to Plaintiff's claims arose in, this Judicial District.

14.     This Court has jurisdiction of this claim arising under Florida law.

15.     Plaintiff reserves the right to file within the United States District Court for the Middle District of Florida.

16.     In November 2020, Defendant Sinn was the owner of real property located in Bonita Springs, Lee County, Florida, commonly known as 26941 Hickory Blvd., Bonita Springs, Florida 34134 and more particularly described as: Property located in the County of Lee, in the State of Florida described: Parc In Govt lot 2 Sec 30 Twp. 47 R 25 Desc In & Or 1280 Pg 957 + #2016000120459 according to the Official Lee County Land Plat thereof.

17.     Defendants employed the Plaintiff with the understanding that the Plaintiff be hired as a per project milestone salaried manager for the electrical and plumbing tasks Defendant Sinn required for employment.   Thereafter, Defendant Sinn requested Plaintiff to extend Plaintiffs project milestone salaried position for the management of additional installation of insulation, additional framing, sheetrock installation & finishing, shower, tile and vanity tasks, together with boat-lift tasks – thus continuing their employer & employee relationship.

18.     Jurisdiction of this action is conferred upon the Court by the Florida and further by Art. X of the State Constitution.

19.     This civil action asserts claims under the federal and under the common law of the State of Florida.

20.     This Court has subject matter, under the provisions of § 29 USC 202(a), 29 USC 207 et seq., and specifically under the provisions of the Fair Labor Standards Act (FLSA), together with the Department of Labor (DOL), whereas, the Plaintiff provided services and is automatically covered under the FLSA within § 29 USC 213 et seq..

21.     This Court has personal jurisdiction over Defendants, and or their Trust - if any, whereas that party may have committed unlawful acts which have caused injury to the Plaintiff within this Judicial District.   The enterprise of Defendant Sinn, and that of Janahn J Sinn and, S & J Classic Developments, llc. employs employees engaged in commerce or in the production of goods for commerce, or in handling, selling, or

otherwise working on goods or materials that have been moved in or produced for commerce, within the meaning of the Fair Labor Standards Act, 29 U.S.C. § ct seq.

22.     This Court has personal jurisdiction over Defendant Sinn and that of Janahn J Sinn because they are individuals who resides in the State of Florida and, upon information and belief, resides in this Judicial District, has committed unlawful acts which have caused injury to the Plaintiff within this Judicial District.

23.     This Court has personal jurisdiction over Defendant S & J Classic Developments, llc. as it is a Florida Limited Liability Company, created in the State of Florida and, upon information and belief, addressed in this Judicial District, has created unlawful acts which have caused injury to the Plaintiff within this Judicial District.

24.     Venue properly lies in this Judicial District under 28 U.S.C. § 1391(b), because Defendant Sinn and Janahn J Sinn reside in, and all the events giving rise to Plaintiff s claims arose in, Judicial District.

25.     Venue properly lies in this Judicial District under 28 U.S.C. § 1391(b), because S & J Classic Developments, llc. is operated where Defendant Sinn and Janahn J Sinn reside in and all the events giving rise to Plaintiff s claims arose in, Judicial District.

26.     This Court has jurisdiction of this claim arising under Florida law.

27.     MOREOVER, Plaintiff reserves the right to file within the United States District Court for the Middle District of Florida.

## THE DEFENDANTS' BACKSTORY

28.     Plaintiff hereby realleges and incorporates by reference the jurisdictions and allegations in paragraphs 1 through 27 as though fully set forth in this cause of action

29.     In an utterly callous display of unwarranted privilege and entitlement and without even a minimal sense of noblesse oblige Defendant Sinn has exploited and denied significant wages and expenses of which the Plaintiff worked without any compensation.

30.     Chiefly, Defendant Sinn willfully and intentionally entered into contracts and agreements with the Plaintiff, for the sole purpose of defrauding the Plaintiff for Defendant Sinn own personal and financial gain.

31.     Moreover, Defendant Sinn's willful and intentional unlawful nature; lack of conscience, empathy, the ability to stand in someone else's shoes, to understand or share another person's feelings; coupled with seeing others as objects that he can use for his own personal and financial gain, terminated the employment relationship, yet continues to hold Plaintiffs' monies and refuses to pay the Plaintiff for his employment wages, supplied materials and workers that Defendant Sinn benefited.

32.     Egregiously, through Defendant Sinn's own admitted gross negligence, fraudulent misrepresentation and willful disregard of the need to use reasonable care – not only placed the Plaintiff and other workers in an environment that is unhealthy and more so *deadly* - Defendant Sinn harmed the Plaintiff and others, through Defendant Sinn's reprehensible socially irresponsible conduct.

33.     Whereas, Defendant Sinn knowingly and intentionally exposed the Plaintiff, and other workers to COVID-19 – furthermore, Defendant Sinn knowingly and intentionally infected the Plaintiff, and other workers with COVID-19 which is derived from SARS-CoV-2 resulting from socially irresponsible conduct of Defendant Sinn.

34.     Defendant Sinn knew or at least reasonably should have known that Defendant Sinn was a carrier of the virus, and had a duty to prevent transmission

of COVID-19 to the Plaintiff, and other workers - which ultimately lead to the infection and hastening of Plaintiff's elderly end-of-life friend. Additionally, Plaintiffs' duties of caring for his elderly friend has been now outsourced to God - while the Plaintiff suffered much, Plaintiff survived this deadly virus.

35.    In conclusion, the elements for gross negligence are clear and present. Defendant Sinn had (1) a duty to the Plaintiff - a duty to prevent transmission of COVID-19; (2) there was a breach of that duty by Defendant Sinn; (3) there is a causal connection between Defendant Sinn's conduct and the harm incurred to the Plaintiff; and (4) the damages in which Plaintiff suffered.

36.    This is an unsettling situation that could have easily been avoided, and as such, Defendant Sinn s liable for gross negligence.

37.    It is important to note that during Plaintiff's entire project campaign, delays are derived from SARS-CoV-2 (COVID-19). Defendant Sinn was very aware of the construction supply disruption – knowing that, as many supply plants shut down - construction still continued in staggering stages. The demands have simply outstripped the supplies, and construction materials were very scarce. Chiefly, the entire electrical, and plumbing supply chain has been hit the hardest in the building world - the same follows suit for the labor shortage.

38.    Additionally, in the wake of Defendant Sinn's fraudulent actions, Defendant Sinn intentionally defrauded two underserved single parent workers at Defendant Sinn's direction of which the Plaintiff had to pay for their services.

## STATEMENT OF CAUSE

39. Plaintiff hereby realleges and incorporates by reference the jurisdictions and allegations in paragraphs 1 through 38 as though fully set forth in this cause of action.

40. This is a cause of action in excess of $15,000.00 exclusive of costs.

41. This is an action for damages arising from Defendants wage theft, breach of contract, unjust enrichment, breach of oral employment contract, quantum meruit, promissory estoppel, fraudulent misrepresentation, negligent misrepresentation, negligence, gross negligence, fair labor standards act, Federal and State minimum wage act, and finally violation of the Florida Constitution.

42. The facts recounted thus far are largely undisputed. That is, the parties agreed to their employer & employee relationship, as well as Plaintiff's employment management agreement, position and contracts that were valid and enforceable contracts when they were executed and that, as long as they were in effect, the contracts and agreements regulated the relationship of the Plaintiff and Defendant Sinn.

43. The Plaintiff further acknowledges that his claims arose out of these agreements and contracts with Defendant Sinn, and that Defendant Sinn admits that the agreements and contract between the Plaintiff and Defendant governed its operation for a period of time and that Defendants breached these contracts.

44. Additionally, this is an action for recovery of unpaid wages, together with wage theft, Standards Act ("FLSA), Florida Minimum Wage Act, Art. X of the Florida Constitution, (IRS) Internal Revenue Service, and composed with other costs and any other appropriate relief inclusive of statutory damages and penalties; that Defendant Sinn, et al herein,

under Sec. 7202, through their willful failure to pay over or collect tax be felony punishable by up to a $10,000 fine or five years in prison, or both and that, Defendant Sinn, et al be prosecuted and criminally liable and fined up to the maximum $10,000, under the Fair Labor Standards Act (FLSA).

## CAUSE OF ACTIONS SPECIFICITIES

45.     Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 44 as though fully set forth in this cause of action.

46.     Specifically, under the provisions of Fair Labor Standards Act ("FLSA"), 29U.S.C. §§ 201 et seg., and Florida laws, specifically under the provisions of Florida Statute § 448.110 et seg., together with §§ et seg., Art. X of the State Constitution and any such other relief and recovery available by law.

47.     Plaintiff, further seeks damages, as well as an additional amount as liquidated damages, interest, costs, and reasonable attorney's fees (if any), under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 USC § 206; 29 USC § 207; and 29 USC § et seg., moreover the Fair Labor Standards Act (FLSA) 29 USC 213 §§ et seg., and 29 U.S.C. § 216(e)(2); 29 CFR §578.3(a) and alleges that Defendant Sinn violated the Fair Labor Standards Act, 29 U.S.C.  § 216, et seq., and Defendant Sinn et al are liable to the Plaintiff for unpaid or underpaid compensation, and such other relief available by law.

48.     Plaintiff, pursuant to the Fair Labor Standards Act (FLSA) 29 CFR §578.3(a) and 29 CFR §578.3(c)(l) (2) (3) alleges that Defendant Sinn, et al violated the Fair Labor Standards Act, 29 U.S.C.  §216, et seq., and Defendant Sinn, et al are liable to the Plaintiff for unpaid and underpaid compensation, and such other relief available by law.

49.     Simultaneously, Plaintiff  alleges, pursuant to Florida Statute § 448.110 together with s. 24, Art. X of the State Constitution (1), that Defendant Sinn, et al violated the Florida Minimum Wage Act § 448.110, and Defendant Sinn, et al are liable to the Plaintiff for unpaid compensation, and such other relief available by law.

50.     In so much Plaintiff alleges, pursuant  to the Fair Labor Standards Act (FLSA), that Defendant Sinn, et al violated the same, § 215, and that the Plaintiff should  be  awarded  statutory,  emotional,  liquidated,  compensatory,  punitive damages, and such other relief available by law through Defendant Sinn's unlawful termination.

51.     Plaintiff was employed by Defendants collectively and individually, and as a Project Manager.

52.     Defendant Sinn is a managing member of S & J Classic Developments, llc.

## INTERVIEW AND ACCEPTANCE SPECIFICITIES

53.     Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 52 as though fully set forth in this cause of action.

54.     In November 2020, Defendant Sinn and reached out to the Plaintiff requesting to meet Plaintiff for a project manager position at Defendant Sinn's Construction Site, situated at 26941 Hickory Blvd. Bonita Springs, Florida 34134, Par in Govt Lot 2 Sec 30 Twp. 47 R 25 Desc In Or 1280 PG 957 + #2016000120459.

55.     Defendant Sinn and Plaintiff agreed to meet at said address that afternoon to discuss the employment opportunities.

56.     Upon Plaintiff's arrival, Defendant Sinn and Defendant Jahahn J Sinn greeted and directed the Plaintiff into the interior ground level construction job-site to be managed.

57.     Upon entering the interior construction job-site, Plaintiff observed the partially renovated enclosed ground-floor level cement walls, inclusive of recent structural, loadbearing steel beams, pilings, footers and trenches. Moreover, a host of framed walls, partially installed HVAC, electrical and constructional works.

58.     Defendant Sinn stated that he wants the downstairs completed. Whereas, Defendant Sinn requests, included but were not limited to the Plaintiff managing roughing-in all electrical and plumbing.

## BLUEPRINTS, SHEETS, DRAWINGS SPECIFICATIONS, RATHER LACK THEREOF

59.     Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 58 as though fully set forth in this cause of action.

60.     During the meeting the Plaintiff inquired to Defendant Sinn regarding blueprints, sheets, specifications, drawings, for both the electrical and plumbing tasks.

61.     Defendant Sinn, was dismissive of the Plaintiff's requests for blueprints, electrical sheets and plumbing sheets.

62.     Throughout the meeting the Plaintiff, again requested blueprints, electrical sheets and plumbing sheets.

63.     Defendant Sinn replied that he - Defendant Sinn:

>*"owns S & J Classic Developments";* that he
>*"didn't need any blueprints, electrical or plumbing sheets"* that;
>*"it's only a garage"* and that
>*"my son is a contractor…he could do it, but he's too busy".*

64.     The Plaintiff argued that he needed these requested items to manage the project.

65.     Defendant Sinn finally said that he *"will e-mail the plans in the morning"* to Plaintiff.

66.     Defendant Sinn emailed the Plaintiff in what appears to be some sort of a DIY home-made one-page rough drawing for furnishing from an interior decorator. Certainly, not the requested blueprints, electrical sheets and plumbing sheets that the Plaintiff requested.

67.     The following day the Plaintiff requested an additional meeting with Defendant Sinn to reiterate the project management needs and tasks.

68.     Defendants Sinn agreed to meet with the Plaintiff; the Plaintiff again argued that this project needed blueprints, electrical sheets and plumbing sheets from which to work from

69.     Defendants Sinn again made reference to his S & J Classic Developments, llc.; while that, he, the builder/owner – *"the project' does not need any further permits"*, as he already had *"permits* pulled", and, again argued *"that it is only a garage."*

70.     Plaintiff argued that it is not a garage, it's a duplex w/ and efficiency, with three-bedrooms, two-one-half baths, consisting of kitchens, living rooms, dining rooms, a laundry room, great room, with a host of capital improvements - as it was an entire ground floor home - framed-out as later argued herein by Defendant Sinn's employees #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal , and finally Defendant Sinn #4 Señor Juan Perez fulano de tal.

## TAKE-OFFS & COVID-19 1.0 SPECIFICITIES

71.     Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 70 as though fully set forth in this cause of action.

72.     Plaintiff further argued to Defendant Sinn, that the "takeoffs" are vital components to the establishment and management to all construction projects:

    a.  to establish the full scope of work required by means of a quantity takeoff;

    b.  to determine the Plaintiffs, break even cost, together with Defendant Sinn's costs;

    c.  to hire skilled workers and labors;

    d.  to complete that scope of work;

    e.  to fulfill contractual obligations, should the Plaintiff be awarded the project.

    f.  moreover, stressed and argued, for the safety of Defendant Sinn, his family and his guests.

73.     Defendant Sinn, kept arguing that *"it's only a damn garage"*, and *"Just get it done!!!"*

74. Notably, a quantity takeoff is the process of breaking down the drawings into predefined tasks or activities and quantifying the number of each based on the plans.

75. Tasks are actual units of work to be performed, such as "install commercial grade duplex receptacle," depicted on the plans using common electrical symbols, and detailed in the plan legend in combination with the

specifications of the construction project that are usually provided by the project engineer – None of this was provided.

76. The Plaintiff had to revisit the construction-site, while creating his own plans for the approval of Defendant Sinn – of which Defendant signed-off.

77. The Plaintiff uses these counts and measurements to determine the material quantity and labor units for each task in the material takeoff, which is the starting point to creating an accurate estimate and building a profitable project.

78. Depending on the materials available, the construction takeoff can be done with ease. However, due to the COVID-19, coupled with the talent shortage, the material supply-chain has ceased for months on-end – of which Defendant Sinn should have heeded Plaintiffs' arguments in order to secure materials earlier on in the start of the project. This project could have had a much better outcome.

79. Note that once the takeoff is complete, one can then adjust supply chain difficulty factors, labor quantities, qualities, labor units, material cost, and add profit margin.

80. In addition, once the project is awarded, the project manager and field team have everything needed to build a work break-down structure. This will include supply chain difficulty factors, labor and material budgets, order material, and schedule resources. The estimate can then be used as a guideline to keep the project running on schedule and under budget.

81. However, Defendant Sinn chose shortcuts. Plaintiff offers that there are shortcuts, however they tend to be the longest paths. There's an old saying, "you can't please the customer without take-offs." This means that in order to be a

successful project manager and help your customer, you must start with a good take-off that covers all the job-related costs including overhead.

82.     Defendant knew the costs and risks for taking of taking on the project – truly not knowing and understanding the entire scope, materials and labor.

83.     At best, he might break even, with wasted months of time and resources. Not to mention, how much money the Plaintiff is losing or leaving on the table.

84.     Without takeoffs, Defendant Sinn knows the risk involved in the work.

85.     That said, since Defendant Sinn would not provide the requested documents, the Plaintiff worked creating and submitting electrical and plumbing limited plans and takeoffs for the tasks required.

## PLUMBING SPECIFICITIES

86.     Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 85 as though fully set forth in this cause of action.

87.     Defendant Sinn employed Plaintiff to manage the plumbing tasks which called for the hiring skilled workers & labors and the purchasing of materials, inclusive of, but not limited to the following plumbing rough-ins for the following:

   a.   acquisition of all plumbing materials to complete required tasks;

   b.   hook-up water supply for the entire ground floor for the following services;

   c.   two-bathrooms - inclusive of, but not limited to two-showers, two-toilets, two-double vanity sinks;

   d.   one-half bath - inclusive of, but not limited to two-showers, one-toilet, one-single vanity sink;

e. one-kitchen - inclusive of, but not limited to one-double sink, one-refrigerator, and/or one-icemaker, one-dishwasher, one-wine chiller, and one-garbage disposal;

f. one-kitchenette/crossover bar - inclusive of, but not limited to one-single sink, one-refrigerator, one-dishwasher, and one-garbage disposal;

g. one-laundry room- inclusive of, but not limited to washer, sink and hot water tank;

h. garage - inclusive of, but not limited to water supply.

88.   Plaintiff has performed all duties, promises, and obligations required of the Plaintiff's employment contract and all conditions precedent that the Plaintiff agreed to perform in the agreement described herein prior to Defendant Sinn terminating the Plaintiff's employment relationship with Defendant Sinn.

## ELECTRICAL SPECIFICITIES

89.   Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 88 as though fully set forth in this cause of action.

90.   Defendant Sinn employed Plaintiff to manage the electrical tasks which called for the hiring skilled workers & labors, the purchasing of materials, inclusive of, but not limited to the following electrical rough-ins for the following:

a. removal and installation of electrical service panel;

b. pull romex and wire service panel;

c. wire and install breakers;

d. acquisition of all electrical materials to complete said works;

e.  provide the three-bedrooms, two-bathrooms, one-half bathroom, one-kitchen, one-kitchenette/crossover bar, one-living room, one-dining room, one-office, one-laundry room, one-seven car garage, one-lanai, three-closets, two-hallways, the following:

f.  120 & 220 Romex wiring throughout ground floor level walls & ceilings;

g.  wire and install single, double, triple, and quad-triple, gang electrical boxes;

h.  pull romex wire, complete connections and install J-boxes throughout;

i.  pull romex wire, complete connections and install electrical joists support;

j.  pull romex wire, complete connections and install recessed canned lights;

k.  pull romex wire, complete connections and install ceiling fan boxes;

l.  pull romex wire, complete connections and install duplex outlets w//wo data jack;

m.  pull romex wire, complete connections and install specialty outlets;

n.  pull romex wire, complete connections and install switched duplexes;

o.  pull romex wire, complete connections and install dimer switches;

p.  pull romex wire, complete connections and install switches;

q.  pull romex wire, complete connections and install fan switches;

r.  pull romex wire, complete connections and install remote switches;

s.  pull romex wire, complete connections and install exhaust fan;

t.  pull romex wire, complete connections and install washer, dryer, hot water tank, refrigerator, icemaker, dishwasher, wine chiller, and garbage disposal outlets;

u.  pull romex wire, complete connections HVAC hook-ups x 2;

v.   Program entire lighting system;

w.   Run and install hubs, routers, and service boards.

91.     Plaintiff has performed all duties, promises, and obligations required of and for the Plaintiff's employment earned wages and all conditions precedent that the Plaintiff agreed to perform in the agreement described herein prior to Defendant Sinn terminating Plaintiff's employment. See ("Termination") herein.

## SUPPLY CHAIN EVENTS IN SPECIFICITY

92.     Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 91 as though fully set forth in this cause of action.

93.     According to the Defendant, *"It's Ground Hog Day, All Over…Again"*.

94.     Plaintiff argues Defendant Sinn became very upset, abusive, and offensive - non-becoming behavior in which the Plaintiff is not accustomed, nor tolerate such behavior- due to the project not moving as fast of Defendant desired speed. Apparently, Defendant Sinn's luxurious lifestyle could not be disrupted with the disruption of the material supply chain due to the COVID-19.

95.     Plaintiff argues that COVID-19 has caused a disruption in the construction supply chain.  Costs are increasing and production has been delayed.

96.     Plaintiff further argues these stems back to the beginning of the pandemic when many plants shut down, while construction continued.

97.     Plaintiff argues that the demand has outstripped supply and construction material are very scarce

98.     The entire electrical, and plumbing supply chain has been hit the hardest in the building world.

99.     Note, although all construction-related businesses were previously deemed as essential, the U.S. Department of Homeland Security Cybersecurity and Infrastructure Security Agency (CISA) recently updated its "Essential Critical Infrastructure Workforce" advisory list to more-accurately define the plumbing and electrical industry.  The Federal Government states that "employees who support the supply chain of building materials from production through application/installation, including cabinetry, fixtures, doors, cement, hardware, plumbing, electrical, heating/cooling, refrigeration, appliances, paint/coatings, and employees whom provide services that enable repair materials and equipment for essential functions" are included.  By explicitly citing the entire supply chain for plumbing and electrical products as essential, the Federal Government has stated just how important each facet of the industry is, from manufacturer to the contractors.

100.    Plaintiff further argues that workers, in both the plumbing and electrical disciplines, report of their work has slowly stopped due to supplies, but that they have had to manage sporadic "no-shows" from workers on a case-by-case basis.  Although current workload remains strong and consistent, plumbing and electrical disciplines, state that new project work has slowed due to some hesitation/uncertainty about the nearer future.

101.    Even more so, product distributors also are reporting that sales and sales support staff are working remotely, still maintaining daily contact with customers.  Counters and warehousing operations are open with limited supplies, and delivery trucks are running – however there are no products to sell or deliver.

## ELECTRICAL SUPPLY CHAIN SPECIFICITIES

102.    Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 101 as though fully set forth in this cause of action.

103. Electrical disciplines argue -, distributor-, and manufacturer-related organizations, including National Electrical Contractors Association (NECA), National Electrical Manufacturers Association (NEMA), Independent Electrical Contractors (IEC), and National Association of Electrical Distributors (NAED), issued a joint letter to political leaders in Washington D.C. on March 20th, stating that electrical industries have limited capabilities necessary to be operational for our country, and to request clear guidance and support from the Federal Government

104. While the majority of wire and conduit is made in the United States, conduit fittings are typically imported due to lower costs; with China resuming work, there still remains a 120-180-day delay.

105. A substantial number of panelboards and circuit breakers products are manufactured in China — in particular, components of panelboards and circuit breakers. While lead times for wire products have increased 120-210 days due to factory shutdowns.

106. Additionally, there are issues with panelboards and circuit breakers manufacturers located in Quebec, Canada, and Mexico which has instituted a shelter-in-place that includes manufacturing.

107. Manufacturers of switchboards, panelboards, circuit breakers, and related equipment are reporting that lead times are 90-180 days in arrears, while that their plants are running at the same rate.

108. Sales staff are not traveling, but are in touch with their customers through videoconferencing, phone, and email.

## PLUMBING SUPPLY CHAIN SPECIFICITIES

109.    Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 108 as though fully set forth in this cause of action.

110.    The majority of plastic piping is made domestically, and all major manufactures are at 10% production mode with major disruptions throughout.

111.    A substantial number of plumbing products are manufactured in China, including plastic fittings and flex-pipe, fixtures, faucets, and valves.  While lead times for some products have increased 180-260 days due to factory shutdowns.

## DEFENDANTS HOME DEPOT OBSESSION SPECIFICITIES

112.    Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 111 as though fully set forth in this cause of action.

113.    Plaintiff argues that *It's Ground Hog Day, again, at the Home Depot"*.

114.    Plaintiff argues that Micro-Manager Defendant Sinn demanded that all materials be purchased through his S & J Classic Developments, llc; Home Depot Credit Card – in order to get bonus points is my understanding, and of course to obtain the IRS *'business'* right-offs.

115.    For the Plaintiff to comply with Defendant Sinn purchase demands, while there is a major shortage of electrical and plumbing supplies – Plaintiff was forced to use his vehicles, fuel and costs to travel sand visit several the Home Depots within a 45 mile radius from the construction site, shop for hours, om-line research, purchase, pick-up, deliver and offload materials on numerous occasions to acquiesce Defendant Sinn demands.

## CONCRETE SPECIFICITIES

116.    Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 115 as though fully set forth in this cause of action.

117.    Plaintiff argues that Defendant Sinn's employees #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal, and finally Defendant Sinn #4 Señor Juan Perez fulano de tal initially cut into the footers to allow Plaintiffs workers access to the main drain.

118.    Defendant Sinn requested that it be recut properly and offered to have Defendant Sinn's #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal , and finally Defendant Sinn #4 Señor Juan Perez fulano de tal recut the footers - Plaintiff argue that Plaintiff would hire sub-contractors to complete the required correctly.

119.    Again, while Plaintiff was off site acquiring much needed supplies at the Home Depot, Defendant Sinn's #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal, and finally Defendant Sinn #4 Señor Juan Perez fulano de tal recut the footer again incorrectly.

120.    Additionally, Defendant Sinn requested that the Plaintiff fill in the footer area of 4-feet x 60-feet with cement that Defendant Sinn's #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal, and finally Defendant Sinn #4 Señor Juan Perez fulano de tal, again inaccurately performed.

121.    Plaintiff reached out to Defendant Sinn regarding the matter and requested that Plaintiff hire bring aboard additional sub-contracted concrete workers to recut the footers correctly.

122.   Defendant Sinn stated the following to Plaintiff about the Plaintiffs dedicated concrete worker who took time off of his job-site to assist the Plaintiff and Defendant Sinn.

*"I DON'T WANT ANY NIGGERS ON MY JOB-SITE";*

*"HE'S A STUPID NIGGER ...;*

*'YOUR NIGGER BOY IS NOT AS GOOD A MY MEXICANS";*

*"I MEAN, CHRIST, WHERE'D YOU GET HIM";*

*YOU WANT ME TO GO PICK-UP SOME MEXICANS AT THE GAS STATION ON EAST TERRY STREET? "*

123.   Defendant Sinn's statements to the Plaintiff made it very clear and precise to the Plaintiff, that Defendant Sinn wanted Plaintiff's concrete worker off the job-site, terminated and not to return to the job-site.

124.   Costs associated with this task cost the Plaintiff additional monies.

125.   Thereafter, Plaintiffs' workers pre-fitted, Adjusted slopes, and pitches, connected all new pipes to fit the showers, washer drain, sinks, and toilets to the main drain.

126.   Defendant Sinn, being inpatient again, directed his employees #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal, and finally Defendant Sinn #4 Señor Juan Perez fulano de tal to cover the pipes of which Plaintiffs' workers had already set into place for the next day's pour.  However, Defendant Sinn wanted it done immediately and instructed his employees #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal, and finally Defendant Sinn #4 Señor Juan Perez fulano de tal to pour concrete over the drain pipes while the Plaintiff and his workers were offsite.

127.    Employees #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal, and finally Defendant Sinn #4 Señor Juan Perez fulano de tal are exterior concrete employees, not specialty workers.

128.    That said, #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal, and finally Defendant Sinn #4 Señor Juan Perez fulano de tal covered the pipes without leveling off the footer, nor making sure the drains maintained their pitch and height in which the Plaintiff's workers set.

129.    Plaintiff has provided services, labors, materials for the benefits of Defendant Sinn; at the special request of Defendant Sinn for which Defendant Sinn, then and there, promised to pay Plaintiff the reasonable value of such services.

130.    Defendant Sinn, became indebted to Plaintiff for received services, labors, materials

131.    No part of the sum wages has been repaid, although payment has been demanded, leaving the balance due, owing, and unpaid to the Plaintiff.

132.    Defendant Sinn assented to and received a benefit in the form of services from the Plaintiff under circumstances where, in the ordinary common events, a reasonable person receiving such benefit normally would expect to pay.

## SOUNDPROOFING INSULATION SPECIFICITIES

133.    Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 132 as though fully set forth in this cause of action.

134.    Defendant Sinn requested that Plaintiff manage the entire ground level ceiling tasks of installing soundproofing insulation first-floor level.

135.   Additionally, Plaintiff discussed with Defendant Sinn that soundproofing insulation alone, is not the best-practices to dampen/baffle the foot-traffic and noise from the

136.   Plaintiff argued that for the greatest noise cancelation benefits, a steel cannel baffling system coupled with the soundproofing insulation.

137.   This benefit is achieved only by strapping and stapling the insulation to the 1st level between the floor joists; installing dampening spaces to the floor joists; installing a steel grid system to the dampening spaces floor joists and then screwing sheetrock steel grid system. This technique crates a void, whereas the sheetrock is not directly in contact with the floor joists - creating a quieter environment for the family.

138.   Defendant Sinn argued that he never heard of *that,* and that he did not want to spend the monies.

139.   The next day Defendant Sinn told Plaintiff that he spoke with his *'drywall guy'* about the steel channel system and instructed the Plaintiff to go ahead and purchase the steel channel system – only this time Plaintiff demanded that Plaintiff source the material from the Plaintiff's supplier.

140.   Plaintiff arranged through Plaintiff's supply chain, the 120 steel cannels, picked-up and delivered, all within 3 hours.

141.   Plaintiff further conferred with Defendant Sinn about the acquisition of the insulation batts for the task.

142.   Defendant Sinn directed the Plaintiff to purchase the materials at Home Depot.

143.   Wait... What...? Home Depot, Not Again!!!

144.    More rabbit holes at the direction of Defendant Sinn were once upon Defendant Sinn.

145.    Plaintiff reiterated that Defendant Sinn's supply chains are bottle-necked, and that the acquisitions of insulation is a difficult task due to plant shut-downs.

146.    Moreover, Plaintiff was forced to often drive to 11-stores – several miles, several days to acquire the materials for Defendant Sinn.

147.    Thereafter, Plaintiff reached out to Defendant Sinn regarding the matter and requested that Plaintiff bring aboard a soundproofing insulation specialty sub-contractor to assist with the insulation.

148.    Requested! Ordered and Done!

149.    Plaintiff further arranged for, and hired two-additional labors - to be directed for the proper installation of Plaintiff acquired materials.

150.    Requested! Ordered and Done!

151.    As the soundproofing insulation began to trickle into the job-site, Defendant Sinn offered Plaintiff to have his *"Boys"* employees #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal, and finally Defendant Sinn #4 Señor Juan Perez fulano de tal assist.

152.    Plaintiff declined Defendant Sinn's offer, due to the past experience of poor workmanship with Defendant Sinn's employees #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal, and finally Defendant Sinn #4 Señor Juan Perez fulano de tal, as they were only exterior concrete employees, and not soundproofing insulation specialty sub-contractors.

153.    Again, while Plaintiff was off-site, going down one of Defendants Sinn's rabbit holes, Defendant Sinn's employees #1 Señor Juan Perez fulano de tal, #2

Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal , and finally Defendant Sinn #4 Señor Juan Perez fulano de tal started to install the soundproofing insulation incorrectly without properly cutting securing, placement and strapping the insulation the 1st level floor joists.

154. Plaintiff and his soundproofing insulation specialty sub-contractor were forced to *come-in behind* Defendant Sinn's employees and re-position, re-cut, re-secure & re-strap the soundproofing insulation.

155. Incredulously, during these re-workings, Plaintiff soundproofing insulation inspections identified several electrical romex wire 'runs' that were manipulated, disrupted, pierced and punctuated, cut and exposed, by what appears to be derived from the razor utility knifes and manual staple guns.

156. The following afternoon Defendant Sinn was out of town, and over the phone argued to the Plaintiff that he changed his, and did not want to waste any more monies on the cannels system.

157. Plaintiff again argued that without the steel cannels system baffling system the installation of soundproofing insulation will be fruitless – only to defiant and irritant deaf ears.

158. Plaintiff, and his specialty steel framing sub-contractor and two-labors were forced to remove steel baffling channels system they installed the previous day.

159. Plaintiff has provided services, specialty steel framing sub-contractor, labors, materials for the benefits of Defendant Sinn; at the special request of Defendant Sinn for which Defendant Sinn, then and there, promised to pay Plaintiff the reasonable value of such services.

160. Defendant Sinn, became indebted to Plaintiff for received services, labors, materials

161. No part of the sum wages has been repaid, although payment has been demanded, leaving the balance due, owing, and unpaid to the Plaintiff.

162. Defendant Sinn assented to and received a benefit in the form of services from the Plaintiff under circumstances where, in the ordinary common events, a reasonable person receiving such benefit normally would expect to pay.

## FRAMING SPECIFICITIES

163. Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 162 as though fully set forth in this cause of action.

164. During Plaintiff's employment interview, Defendant Sinn, Defendant Sinn stated that the ground floor framing is *"all good and ready to go"!*

165. Plaintiff took and relied upon Defendant Sinn's statement.

166. After Plaintiff was hired, Plaintiff requested to revisit the job-site a review this *"all good and ready to go!!!"* framing. Upon further inspection and review of the framing it appears that Defendant Sinn and the Plaintiff have opposing views of what is standard quality framing and what is a hotchpotch with a melody of extra lumber strewn together.

167. As it may, it appears that, once again, Defendant Sinn directed his *"Boys"* employees #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal , and finally Defendant Sinn #4 Señor Juan Perez fulano de tal to attempts to carry out the tasks of which they and Defendant Sinn knew was not their specialty craft – none of which was up to code!!!

168. Thereafter, Defendant Sinn directed that the Plaintiff manages the entire ground level ceilings and walls sheetrock/drywall installation.

169. Requested! Ordered and Done!

170.     Plaintiff, knowing that there is a sheetrock shortage, immediately sources the sheetrock, corner-bead, tape, mud sandpapers, and other materials required for the installations.

171.     Upon delivery Defendant Sinn begins to argue with the Plaintiff as to why Plaintiff ordered and delivered the materials way before they were due to be installed.

172.     Plaintiff explained to his employer Defendant Sinn that the materials are going to increase in costs up to 500% at the first of the year due to COVID-19 and, its wake of the supply line – the supply and demand concept.

173.     Plaintiff further reached out and conferred with Defendant Sinn regarding the matter and requested that Plaintiff bring aboard a framing specialist sub-contractor to assist with the insulation.

174.     Requested!  Ordered and Done!

175.     The framing specialist sub-contractor began immediate to correct all of Defendant Sinn's employees #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal , and finally Defendant Sinn #4 Señor Juan Perez fulano de tal debauched framing attempts so that the electric and plumbing tasks could be completed and readied for the installation of the sheetrock.

176.     The framing specialist sub-contractor, also had to reframe doors, windows, ingresses / egresses, closets, HVAC decks and doors, reconfigure vertical wall framing to allow for sink drains, remove and reframe several sections of the ceilings, together with a host of other task for the sheetrock installation.

177.     Plaintiff has provided services, specialty steel framing sub-contractor, labors, materials for the benefits of Defendant Sinn; at the special request of

Defendant Sinn for which Defendant Sinn, then and there, promised to pay Plaintiff the reasonable value of such services.

178. Defendant Sinn, became indebted to Plaintiff for received services, labors, materials

179. No part of the sum wages has been repaid, although payment has been demanded, leaving the balance due, owing, and unpaid to the Plaintiff.

180. Defendant Sinn assented to and received a benefit in the form of services from the Plaintiff under circumstances where, in the ordinary common events, a reasonable person receiving such benefit normally would expect to pay.

## SHEETROCK INSTALLATION SPECIFICITIES

181. Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 180 as though fully set forth in this cause of action.

182. During Plaintiff's employment, Defendant Sinn, Defendant Sinn directed that the Plaintiff manages the entire ground level ceilings and walls sheetrock/drywall installation.

183. Requested! Ordered and Done!

184. Again, Plaintiff, knowing that there is a sheetrock shortage, immediately sources the sheetrock, corner-bead, tape, mud sandpapers, and other materials required for the installations.

185. Plaintiff further reached out and conferred with Defendant Sinn regarding the matter and requested that Plaintiff continue utilizing framing/sheetrock specialist sub-contractor to assist with the insulation.

186. Requested! Ordered and Done!

187.   Due to the skilled talent shortage, Plaintiff reached out and conferred with Defendant Sinn regarding the matter and requested that Plaintiff source sheetrock installers and finishers.

188.   Defendant Sinn agreed with Plaintiff and directed Plaintiff to source said talent.

189.   Plaintiff negotiated, scheduled and sourced said talent for the sheetrock install and finishing.

190.   Requested! Ordered and Done!

191.   At this phase of the project there are several workers on-site, together with the Plaintiff collectively *patchworking* several their assigned tasks as the materials arrived on-site.

192.   Often the Plaintiff never knew what material would become available and would arrive on-site - scheduling workers for installs without materials was extremally frustrating and reaching a cost prohibitive point Plaintiff explained to Defendant Sinn.

193.   Defendant Sinn didn't care what the challenges were, he just demanded that the job be complete. Often, Defendant Sinn complained that it was Ground Hog day, every day.

194.   Even so more for the Plaintiff, as it became so unbearable for Plaintiff to arrive in the mornings, knowing that Defendant Sinn was going to be abusive and offensive each morning.

195.   As the scheduled sheetrock install date approached, and again, due to the delays with materials and labor, Plaintiff reached out to the contracted sheetrock

installers and finishers to advise them that the project site-campaign was delayed again, and that the Plaintiff would have to push back the install date.

196. These, the initial installers and finishers were upset, as they rearranged their schedules to accommodate the Plaintiffs work requests.

197. Moreover, they declined to even attempt to reschedule again as their services are in high demand and, well…they canceled the project.

198. That's said the Plaintiff had to scramble to acquire sheetrock talent. During which time the Plaintiffs previous and on-site framer and sheetrock specialist continue to portion together the installation of the sheetrock until the Plaintiff could source more talent.

199. Plaintiff was finally able to negotiate terms and conditions, and sourced talent from another contractor.

200. Again, due to the material delays, lack of plans, talented worker shortage, coupled with Defendant Sinn's change-orders Defendant Sinn delays continued.

201. Update. All electrical tasks are 95% complete; while the plumbing tasks are 98% complete. Sheetrock is being installed at a rapid rate, while finishers are following behind the installers.

202. According to Defendant Sinn, the sheetrock installers & finishers completed the tasks to Defendants Sinn's specification.

203. Defendant Sinn took it upon himself to pay the Plaintiffs sub-contractors without even conferring with the Plaintiff.

204. Plaintiff demanded that the installers & finishers return to continue to sand the walls to the Plaintiff's specifications.

205.    They returned to complete their tasks the next day.

206.    It now appears that these workers *double-dipped* for their wages – didn't they think they wouldn't get caught?

207.    Defendant was not aware that the installers & finishers took monies from Defendant

208.    It was a few days after Plaintiff had the installers & finishers return to complete the Plaintiff's specifications that Defendant Sinn apprized the Plaintiff of his costly actions.

209.    First of all, Defendant Sinn had no business inquiring and or paying the Plaintiffs sub-contractors.

210.    Defendant Sinn didn't bother to pay the Plaintiffs other workers, let alone the Plaintiff so why now?

211.    Plaintiff already paid his workers each day for their services.

212.    Plaintiff has provided services, specialty sheetrock and finisher workers, labors, materials for the benefits of Defendant Sinn; at the special request of Defendant Sinn for which Defendant Sinn, then and there, promised to pay Plaintiff the reasonable value of such services.

213.    Defendant Sinn, became indebted to Plaintiff for received services, labors, materials

214.    Only a fraction of monies has been paid, none of the sum wages has been repaid, although the remainder payment has been demanded, leaving the balance due, owing, and unpaid to the Plaintiff.

215.   Defendant Sinn assented to and received a benefit in the form of services from the Plaintiff under circumstances where, in the ordinary common events, a reasonable person receiving such benefit normally would expect to pay.

## CHANGE ORDERS SPECIFICITIES

216.   Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 215 as though fully set forth in this cause of action.

217.   Plaintiff argues that Defendant Sinn requested from Plaintiff during Plaintiff's employment that Plaintiff and his workers perform the following change order tasks:

215.   Front Foyer

215.1.   Electric

   a.   Install electrical outlet in front foyer;

   b.   Install remote switch for newly installed foyer outlet;

   c.   Install remote for newly installed foyer outlet.

216.   Front Apartment

216.1   Framing

   a.   Properly reframe front ingress / egress door rough opening;

   b.   Properly reframe windows rough opening;

   c.   Properly reframe & re-secure kitchenette rough-in

   d.   Properly reframe closet #1 door rough opening;

   e.   Properly frame closet #1 piling;

   f.   Properly reframe closet door #2 rough opening;

   g.   Properly frame closet #2 piling;

h. Properly reframe <u>bathroom</u> door rough opening;

i. Properly frame & fir <u>bathroom</u> piling;

j. Properly reframe <u>bathroom</u> window rough opening;

k. Properly frame a new <u>bathroom</u> shower knee wall/half-wall/partition wall.

216.2 Sheetrock & Waterproofing

a. Properly install green board on newly built <u>bathroom</u> shower knee wall partition wall;

b. Apply Red Guard® waterproofing material to newly built bathroom shower knee wall;

c. Apply Red Guard® waterproofing material to entire <u>bathroom</u> shower.

216.3     Plumbing

a. Remove <u>bathroom</u> newly installed shower plumbing pipes, connections and fixtures from the east wall, and reinstall said shower plumbing pipes, connections and fixtures on the west portion of the shower wall.

216.4 Electric

a. Run and Install 220 Romex to <u>Closet #1.</u>

b. Rewire Electric Romex <u>ceiling</u> runs to accommodate additional HVAC units;

c. Relocate <u>bathroom</u> double ganged box, romex and outlets;

d. Locate and Rewire Electric Romex <u>ceiling</u> runs damaged by Defendant Sinn's employees Señor Juan Perez #1 thru #4.

216.5 Concrete

a.   Cut additional <u>bathroom</u> existing footer foundation, dropping ¼ inch vertically to accommodate laundry room washer;

b.   Cut additional <u>bathroom</u> existing footer foundation, dropping ¼ inch vertically to accommodate laundry room utility sink;

c.   Cut additional <u>bathroom</u> existing footer foundation, dropping ¼ inch vertically to accommodate bathroom toilet;

d.   Cut additional <u>bathroom</u> existing footer foundation, dropping ¼ inch vertically to accommodate bathroom sinks;

e.   Cut additional <u>bathroom</u> existing footer foundation, dropping ¼ inch vertically to accommodate bathroom shower.

217.   <u>Main Apartment</u>

217.1.  Framing

a.   Properly reframe <u>garage hall</u> ingress / egress door rough opening;

b.   Properly frame & fir <u>garage</u> north wall;

c.   Properly frame & fir <u>garage</u> north window;

d.   Properly frame & fir exterior <u>garage</u> storage;

e.   Properly frame & fir interior <u>garage</u> storage;

f.   Properly frame <u>garage</u> HVAC Shelf;

g.   Properly reframe <u>garage</u> HVAC Shelf due to new specs;

h.   Properly reframe <u>garage</u> ceiling due to HVAC;

217.2.  Sheetrock & Waterproofing

a.   None.

217.3. Plumbing

    a. Run 1" Pex to <u>garage</u> from main supply line.

217.4. Electric

    a. Install 4 (four) additional storage recessed lights;

    b. Wired 4 (four) additional storage romex run;

    c. Install 4 (four) additional garage recessed lights;

    d. Wired 4 (four) additional romex runs;

    e. Install 1 (one) additional garage ceiling fan box;

    f. Wired 1 (one) additional ceiling fan romex run;

    g. Installed 4 (four) additional garage switches;

    h. Wired 4 (four) additional romex run;

    i. Installed 1 (one) additional storage switches;

    j. Wired 1 (one) additional romex run;

    k. Installed 2 (two) additional storage outlets.

    l. Wired 1 (one) additional romex HVAC run;

217.5. Concrete

    a. Cut additional hole for water ball valve.

217.6     Exterior

217.7  Lanai

    a. Fish for preinstalled romex;

b. Cut-out 6 (six) cement holes for the installation of 6 (six) recessed canned lights;

c. Install 6 (six) recessed canned lights;

d. Repair Damaged Romex due to Defendant Sinn's Señor Juan Perez #1 thru #4 previous attempts.

217.8. South HVAC Deck

a.  Install Breaker Box;

b.  Run HVAC 220 Romex wire Power Source.

## EARNED WAGES, LABOR AND MATERIALS COSTS SPECIFICITIES

218.    Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 217.8b as though fully set forth in this cause of action.

219.    In November 2020 the  Plaintiff and Defendant Sinn entered into an employment management agreement in which Plaintiff agreed to provide services, materials, skilled workers and labors for the benefits of Defendant Sinn, yet Defendant Sinn willfully failed to fully pay the Plaintiffs compensation of earned wages, Plaintiff paid materials, Plaintiff paid skilled workers and labors for which Defendant Sinn agreed pay the Plaintiff as  described herein, for the benefit of Defendant Sinn.

220.    Between November 2020 and March 2021, Defendant Sinn was indebted to the Plaintiff for unpaid earned wages, skilled workers and labors, materials social security withholding benefits, unemployment insurance premiums federal tax withholdings and Plaintiffs IRS W-4 withholdings certificate.

221.    Plaintiff has performed all duties, promises, and obligations required of the Plaintiff and all conditions precedent that the Plaintiff agreed to perform in the

management agreement described herein until Defendant Sinn terminated Plaintiff's employment status with Defendant Sinn.

222. Plaintiff argues that Defendant Sinn initialed contractual obligation, showing that Defendant Sinn agreed to the terms and conditions of the employment management agreement

223. Under the terms of the employment management agreement, together with Defendant Sinn acknowledged contractual obligations, Defendant Sinn is obligated to transfer monies to the Plaintiff.

224. Plaintiff has performed all of the conditions, covenants and promises required by it to be performed in accordance with the terms and conditions of the employment management agreement.

225. Defendant Sinn required the Plaintiff to perform additional works which required skilled workers, labors and materials.

226. Defendant required the Plaintiff to perform additional works to complete the tasks required from the Plaintiff as Defendant Sinn job-site was unsafe to work as Defendant Sinn acquire COVID-19 and the Plaintiff was subjected and removed on behalf of Defendant Sinn.

227. Defendant Sinn, et al breached their employment management agreement with the Plaintiff by failing and refusing to perform in good faith their promise to pay the Plaintiff.

228. As a result of the breach of Defendant Sinn, in the obligations pursuant to the employment management agreement, the sum of $53,371.29 owed from Defendant Sinn is now due, owing, and unpaid. Demand has been made on Defendant Sinn for repayments, nonetheless Defendant Sinn became indebted to the Plaintiff between November 2020 and March 2021, for unpaid earned wages,

skilled workers, labors, and materials for the benefits of Defendant Sinn; at the special request of Defendant Sinn for which Defendant Sinn, then and there, promised to pay Plaintiff the reasonable value of such services.

### Earned Wages

229. Plaintiff has provided earned management services for the benefits of Defendant Sinn; at the special request of Defendant Sinn for which Defendant Sinn, then and there, promised to pay Plaintiff the reasonable value of such earned management services.

230. Defendant Sinn, became indebted to Plaintiff for wages earned for Plaintiff's management services performed.

231. No part of the Plaintiffs' sum wages has been repaid, although payment has been demanded, leaving the balance due, owing, and unpaid to the Plaintiff.

232. Defendant Sinn assented to and received a benefit in the form of management services from the Plaintiff under circumstances where, in the ordinary common events, a reasonable person receiving such benefit normally would expect to pay.

233. Plaintiff provided services for the benefits of Defendant Sinn, yet Defendant Sinn willfully failed to fully pay the Plaintiffs compensation of earned wages.

### Plumbing Management Services

### Earned Wages

234. Plaintiff has not been paid for his earned plumbing management services wages totaling $11,043.67 owed by Defendant Sinn for the benefits of Defendant Sinn.

235.    Plaintiff has not been paid for his Plaintiff change order management totaling $1,283.00 owed by Defendant Sinn for the benefits of Defendant Sinn.

236.    That said, Plaintiffs total earned plumbing management services wages totaling $12,326.67 owed by Defendant Sinn for the benefits of Defendant Sinn.

<u>Skilled Workers & Labors</u>

237.    Plaintiff has provided skilled workers and labors for the benefits of Defendant Sinn; at the special request of Defendant Sinn for which Defendant Sinn, then and there, promised to pay Plaintiff the reasonable value of such skilled workers and labors.

238.    Defendant Sinn, became indebted to Plaintiff for work performed by the skilled workers and labors Plaintiff provided and paid.

239.    No part of the sum skilled workers and labors has been repaid, although payment has been demanded, leaving the balance due, owing, and unpaid to the Plaintiff.

240.    Defendant Sinn assented to and received a benefit in the form of skilled workers and labors from the Plaintiff under circumstances where, in the ordinary common events, a reasonable person receiving such benefit normally would expect to pay.

241.    Plaintiff provided and paid for skilled workers and labors for the benefits of Defendant Sinn, yet Defendant Sinn willfully failed to fully pay the Plaintiffs compensation of said skilled workers.

242.    Plaintiff has not been paid for his skilled framing and sheetrock worker totaling <u>$3,237.50</u> owed by Defendant Sinn for the benefits of Defendant Sinn.

243.   Plaintiff has not been paid for his skilled concrete worker totaling $703.00 owed by Defendant Sinn for the benefits of Defendant Sinn.

244.   Plaintiff has not been paid for his skilled plumbing worker totaling $720.00 owed by Defendant Sinn for the benefits of Defendant Sinn.

245.   Plaintiff has not been paid for his skilled plumber labor totaling $500.00 owed by Defendant Sinn for the benefits of Defendant Sinn.

246.   That said an additional $5,160.50 owed by Defendant Sinn for the benefits of Defendant Sinn.

Combined Plumbing Earned Wages, Skilled Workers & Labors

247.   Combined earned wages, collectively with skilled workers and labors sum is $17,487.17.

Electrical Management Services

Earned Wages

248.   Plaintiff has not been paid for his earned electrical management services wages totaling $9,717.90 owed by Defendant Sinn for the benefits of Defendant Sinn.

249.   Plaintiff has not been paid for his electrical change order management services wages totaling $2,795.00 owed by Defendant Sinn for the benefits of Defendant Sinn.

250.   That said, Plaintiffs total earned electrical change order management services wages totaling $12,512.90 owed by Defendant Sinn for the benefits of Defendant Sinn.

## Skilled Workers & Labors

251.   Plaintiff has provided skilled workers and labors for the benefits of Defendant Sinn; at the special request of Defendant Sinn for which Defendant Sinn, then and there, promised to pay Plaintiff the reasonable value of such skilled workers and labors.

252.   Defendant Sinn, became indebted to Plaintiff for work performed by the skilled workers and labors Plaintiff provided and paid.

253.   No part of the sum skilled workers and labors has been repaid, although payment has been demanded, leaving the balance due, owing, and unpaid to the Plaintiff.

254.   Defendant Sinn assented to and received a benefit in the form of skilled workers and labors from the Plaintiff under circumstances where, in the ordinary common events, a reasonable person receiving such benefit normally would expect to pay.

255.   Plaintiff provided and paid for skilled workers and labors for the benefits of Defendant Sinn, yet Defendant Sinn willfully failed to fully pay the Plaintiffs compensation of said skilled workers.

256.   Plaintiff has not been paid for his skilled electrical workers totaling $750.00 owed by Defendant Sinn for the benefits of Defendant Sinn.

257.   Plaintiff has not been paid for his skilled electrical labor totaling $1,600.00 owed by Defendant Sinn for the benefits of Defendant Sinn.

258.   Plaintiff has not been paid for his skilled additional re-electrical labor totaling $800.00 owed by Defendant Sinn for the benefits of Defendant Sinn.

259.    That said an additional $3,150.00 owed by Defendant Sinn for the benefits of Defendant Sinn.

## Combined Electrical Earned Wages, Skilled Workers & Labors

260.    Combined earned wages, collectively with skilled workers and labors sum is $15,662.88

## Combined Electrical & Plumbing Earned Wages, Skilled Workers & Labors

261.    Combined electrical and plumbing earned wages, collectively with skilled workers and labors sum is $33,150.05

## Sheetrock Installation and Finishing

262.    Plaintiff has not been paid for his skilled sheetrock installers & finishers totaling $7,200.00 owed by Defendant Sinn for the benefits of Defendant Sinn.

263.    Plaintiff has not been paid for his misc. sheetrock preparation works totaling $1,200.00 owed by Defendant Sinn for the benefits of Defendant Sinn.

264.    Combined earned wages, collectively with skilled workers and labors sum is $8,400.00.

## Miscellaneous Services

265.    Plaintiff has not been paid for his skilled framing and sheetrock worker totaling $1,600.00 owed by Defendant Sinn for the benefits of Defendant Sinn.

266.    Plaintiff has not been paid for his skilled cement workers totaling $527.29 owed by Defendant Sinn for the benefits of Defendant Sinn.

267.    Plaintiff has not been paid for his skilled boat-lift technician totaling $250.00 owed by Defendant Sinn for the benefits of Defendant Sinn.

268. Plaintiff has not been paid for his labors totaling $450.00 owed by Defendant Sinn for the benefits of Defendant Sinn.

269. Combined earned wages, collectively with skilled workers and labors sum is $2,827.29.

<u>Materials</u>

270. Plaintiff has provided materials for the benefits of Defendant Sinn; at the special request of Defendant Sinn for which Defendant Sinn, then and there, promised to pay Plaintiff the reasonable value of such materials.

271. Defendant Sinn, became indebted to Plaintiff for received materials.

272. No part of the sum materials has been repaid, although payment has been demanded, leaving the balance due, owing, and unpaid to the Plaintiff.

273. Defendant Sinn assented to and received a benefit in the form of materials from the Plaintiff under circumstances where, in the ordinary common events, a reasonable person receiving such benefit normally would expect to pay.

274. Plaintiff provided and paid for materials for the benefits of Defendant Sinn, Defendant Sinn willfully failed to fully pay the Plaintiffs compensation of said materials.

275. Plaintiff has not been paid for his materials totaling $2,787.05 owed by Defendant Sinn for the benefits of Defendant Sinn.

276. Sinn has failed and refused and continues to fail and refuse, to repay the sum loaned by Plaintiff.

## Supply Chain

277.    Plaintiff has provided earned income through identifications, sourcing, acquisitions, transport of materials from source to job-site for the benefits of Defendant Sinn; at the special request of Defendant Sinn which Defendant Sinn, then and there, promised to pay Plaintiff the reasonable value of such materials.

278.    Defendant Sinn, became indebted to Plaintiff for received materials.

279.    No part of the sum materials has been repaid, although payment has been demanded, leaving the balance due, owing, and unpaid to the Plaintiff.

280.    Defendant Sinn assented to and received a benefit in the form of materials from the Plaintiff under circumstances where, in the ordinary common events, a reasonable person receiving such benefit normally would expect to pay said earned wages services

281.    Plaintiff provided and paid for materials for the benefits of Defendant Sinn,

Defendant Sinn willfully failed to fully pay the Plaintiffs compensation of said materials.

282.    Plaintiff has not been paid for his materials totaling $6,206.88 owed by Defendant Sinn for the benefits of Defendant Sinn.

283.    Sinn has failed and refused and continues to fail and refuse, to repay the sum loaned by Plaintiff.

## EMPLOYMENT TERMINATION SPECIFICITIES

284.    Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 285 as though fully set forth in this cause of action.

285.    On or about February 2021, Defendant Sinn requested that Plaintiff install a shower-pan in both full-bathrooms.

286.    Plaintiff explained to Defendant Sinn that there are different methods of installing shower-pans, as well as different methods of shower wall waterproofing methods.

287.    Plaintiff agreed to prepare the walls and floors, together with sourcing a worker to complete the tasks.

288.    Thereafter, March 3, 2021, Tile worker arrives at the job-site, the worker noticed that there was other works that the worker could possibly acquire. i.e. big-ticket tasks.

289.    Prior to the Plaintiff installing the waterproofing green board, the Plaintiff requested to install lumber for the installation of grab-bars, shower towel bars, and along the bottom perimeter. Defendant Sinn argued that he did not want to waste any more time and to ("*just get it done!!!*").

290.    No good deed goes unpunished. This worker had Defendant Sinn so bamboozled with his sales technique, that he had Defendant Sinn up in a roar. Arguing that Plaintiff and his skilled workers poorly performed their assigned tasks.

291.    At this point, again, Defendant Sinn's behavior became so offensive and abusive. Calling the Plaintiff, a ("*Fucking Dumb-Ass*"), to get ("*Your Fucking Piece of Shit Truck Off My Drive Way*"); and to ("*Get the Hell Out of Here*" … ("*I Don't Want to See Your Face Anymore*").

292.    Now with the Plaintiff terminated it surely appears that in front of the worker, the worker was able to manipulate Defendant Sinn into whatever he desired and took over those of the Plaintiff's responsibilities - even hiring another

man for the plumbing repairs that Defendant Sinn's employees #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal during this entire fiasco.

293.    The Plaintiff already scheduled a boat-lift technician for that next Saturday; Called Defendant and advised him (through voicemail) that the Plaintiff was fulfilling his obligations to he and to the technician; while that the technician and the Plaintiff would be on site to install a motherboard for the lift.

294.    Plaintiff, knew that Defendant Sinn was having family coming in and was advised previously to be on-site performing tasks during their visit.

295.    During which time Passover is being observed, and for Defendant Sinn – Easter.

296.    Plaintiff, waited patiently over the next few weeks, hoping that the reputed abusive behavior was just another one of Defendant Sinn's medically induced or lack thereof mind-set.  That was not the case.  Plaintiff left several messages for Defendant Sinn - without any response.  It is now apparent that Defendant Sinn terminated his employee and employer relationship with the Plaintiff.

297.    Plaintiff has sent invoices to Defendant Sinn without any response.

## S A R S - C o V - 2   C O V I D - 1 9

298.    Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 297 as though fully set forth in this cause of action.

299.    Egregiously, through Defendant Sinn's own admitted gross negligence, fraudulent misrepresentation and willful disregard of the need to use reasonable care – not only placed the Plaintiff in an environment that is unhealthy and more

so *deadly* - Defendant Sinn harmed the Plaintiff and others, through Defendant Sinn's reprehensible socially irresponsible conduct.

300.    Additionally, Defendant Sinn harmed and endangered the Plaintiff's dear friend and patient in which the Plaintiff is the primary end-of-life care caregiver - an 82- year old female who is unable to ambulate and bedridden due to her progressive Amyotrophic Lateral Sclerosis (ALS) disease.   *The particularly devastating part of her disease; unlike cancer, with its rare but real remissions - ALS is always fatal.  Although not as quick as COVID-19.*

301.    Whereas, Defendant Sinn knowingly and intentionally exposed the Plaintiff to COVID-19 – furthermore, Defendant Sinn knowingly and intentionally infected the Plaintiff and others with COVID-19 which is derived from SARS-CoV-2 resulting from socially irresponsible conduct of Defendant Sinn.

302.    Defendant Sinn knew or at least reasonably should have known that Defendant Sinn was a carrier of the virus, and had a duty to prevent transmission of COVID-19 to the Plaintiff - which ultimately lead to the infection and hastening of his elderly end-of-life friend.  Chiefly, Plaintiffs end-of-life duties of caring for his elderly friend was outsourced to God.  While the Plaintiff suffered much, the Plaintiff survived this deadly virus.

303.    In conclusion, the elements for gross negligence are clear and present. Defendant Sinn had (1) a duty to the Plaintiff - a duty to prevent transmission of COVID-19; (2) there was a breach of that duty by Defendant Sinn; (3) there is a causal connection between Defendant Sinn's conduct and the harm incurred to the Plaintiff; and (4) the damages in which Plaintiff suffered.

304.    This is an unsettling situation that could have easily been avoided, and as such, Defendant Sinn s liable for gross negligence.

305. It is important to note that during this entire project the Plaintiff's campaign, delays are derived from SARS-CoV-2 (COVID-19), Defendant Sinn, Defendant Sinn's employees #1 Señor Juan Perez fulano de tal, #2 Señor Juan Perez fulano de tal, #3 Señor Juan Perez fulano de tal , and finally Defendant Sinn #4 Señor Juan Perez fulano de tal., the disruption in the construction supply, as many plants shut down, and construction continued - the demand has outstripped supply and construction material are very scarce.  The entire electrical, and plumbing supply chain has been hit the hardest in the building world - the same follows suit for the labor shortage.

306. Additionally, in the wake of Defendant Sinn's fraudulent actions, Defendant Sinn intentionally defrauded two underserved single parents by infecting them with the SARS-CoV-2 at Defendant Sinn's direction of which the Plaintiff had to pay for their services.

## PERMITS & CODE ENFORCEMENT SPECIFICITIES

307. Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 306 as though fully set forth in this cause of action.

308. Plaintiff, only discovered, as of this filing, that Defendant Sinn never applied for, nor received the proper building permits for the works managed and performed.

309. During the review of Defendant Sin (sic) previous code-enforcement *viewable exteriorly* building permit documentations, its notable that Defendant Sinn files under Builder / Owner.

310. Additionally, based upon the Plaintiffs conversation with Defendant Sins (sic) illegal alien / non-United States citizen, deportable non-immigrant visa or green card

holders; known Señor Juan Perez #1- fulano de tal; and Señor Juan Perez #2- fulano de tal, collectively they together with Señor Juan Perez #3- fulano de tal; Señor Juan Perez #4- fulano de tal performed many of the illegal works on said property at the direction of Defendant Sinn without proper permits.

311. Moreover, within Permit Application PRES 18-54658-BOS it argues the following:

### PRE 18-56282-BOS

### ALL NON-FEMA APPROVED ITEMS ON BOTTOM FLOOR TO BE REMOVED.

312. Important to note that September, 29, 2020 is the date Defendant Sinn had other works finalized by the inspectors - leaving the interior of the home – "Free of Inspectors View."

313. For the next six-weeks Defendant Sinn not only requested his previous electrician and plumber – which declined Defendant Sinn offer, as they argue they would have lost their licenses. Defendant Sinn thereafter offered other local specialty talent to quietly complete his illegal tasks.

### IN CONCLUSION – IN SPECIFICITY

314. Plaintiff hereby realleges and incorporates by reference cause of actions in paragraphs 1 through 313 as though fully set forth in this cause of action.

315. To date of this filing, Defendant Sinn has refused the Plaintiff to perform his part of the earned wages, additional skilled workers & labors, additional materials, and additional works required from Defendant Sinn.

316. Defendant Sinn has therefore breached his employer & employee relationship as well as Plaintiffs employment management agreement, position

and contracts with the Plaintiff, who has been *damaged thereby in the sum of* $53,371.29 plus interest at the legal rate from and after the date due according to proof, together with *treble damages* in the amount of $53,371.29 x 3 =$160,113.87

317.     Defendant Sinn's failure and refusal to pay the Plaintiffs compensation of earned wages, additional wages, skilled workers & labors, and materials totaling $53,371.29 of oral employment contract, quantum meruit, promissory estoppel, fraudulent misrepresentation, negligent misrepresentation, negligence, gross negligence, fair labor standards act, Federal and State minimum wage act, and finally violation of the Florida Constitution.

318.     Because of Defendant' breach of these agreements and contracts, Plaintiff has suffered general and consequential damages, including but not limited loss of work, loss of clients, coupled with loss of wages, loss of reputation, loss of workers, along with expenses, Plaintiff is therefore entitled to additional damages of $500.00 per day x  120 days = $60,000.00 -$33,150.00 = $26,850.00.

319.     Plaintiff fulfilled all of his obligations under these agreements and contracts.  As a result of Defendant Sinn, the Plaintiff has been damaged.

320.     In November 2020 in Lee, County, Florida, Defendant Sinn accepted the submitted contracts and agreements from the Plaintiff.

321.     In November 2020, Plaintiff and Defendant Sinn enter into these contracts and agreement in which Plaintiff agreed provided services for wages, skilled workers & labors, and materials for the benefits of Defendant Sinn.  Yet Defendant Sinn continues to willfully fail to fully pay the Plaintiffs (1) compensation of earned wages; (2) any of the skilled worker & labor wages, (3) together with the material costs that the Plaintiff has suffered.

322.    Plaintiff has performed all duties, promises, and obligations required of Plaintiff and all conditions precedent that Plaintiff and Defendant Sinn agreed to perform in these contracts and agreements described herein - Defendant Sinn is obligated to pay the Plaintiff.

323.    Plaintiff has performed all of the conditions, covenants and promises required by it to be performed in accordance with the terms and conditions of the oral contract, by performing management tasks on said property described herein.

324.    One of the many tasks Defendant Sinn required of the Plaintiff, is to hire skilled workers and labors.  Plaintiff provided these skilled workers and labors throughout the project., Defendant Sinn refuses to reimburse the Plaintiff for said expenses.  As a result of the breach of Defendant Sinn, in the obligations pursuant to these contracts and agreements, the entire sum of $18,337.79 owed from Defendant Sinn, and each of them, is now due, owing, and unpaid.  Demand has been made on Defendant Sinn, and each of them, for repayment but Defendant Sinn, and each of them have failed and refused and continue to fail and refuse, to repay the sum loaned by Plaintiff.

325.    Defendant' failure and refusal to pay the Plaintiff herein constitutes a breach of the agreement.

326.    Plaintiff fulfilled all of his obligations under the agreement.

327.    Defendant Sinn materially breached these contracts and agreements because Defendant Sinn's failure and refusal to convey owed monies described herein to Plaintiff.

328.    As a result of the above-referenced breach of Defendant Sinn the Plaintiff has been damaged.

329.    Again, Defendant Sinn willfully and intentionally entered into these contracts and agreements with the Plaintiff, for the sole purpose of defrauding the Plaintiff for Defendant Sinn own personal and financial gain.

330.    Additionally, in the wake of Defendant Sinn's fraudulent actions, Defendant Sinn intentionally defrauded two underserved single parent fathers or which the Plaintiff had to pay for their services.

331.    Moreover, through Defendant Sinn's sinful and willfully intentional unlawful nature - lack of conscience, empathy, the ability to stand in someone else's shoes, to understand or share another person's feelings; coupled with seeing others as objects that Defendant Sinn can use for Defendant Sinn's own personal and financial gain, yet continues to hold Plaintiffs' monies and refuses to pay the Plaintiff for his earned wages, supplied materials and skilled workers and labors - Defendant Sinn benefited, has damaged the Plaintiff.

332.    Whereas, Defendant Sins (sic) aforementioned actions denied the Plaintiff to assist his elderly end-of-life friend with palliative and companion care.

333.    Defendant Sinn continues to hold Plaintiffs' monies and refuses to pay the Plaintiff for his earned wages, supplied materials and skilled workers and labors Defendant Sinn benefited, has damaged the Plaintiff, of which is currently past due, has been deemed uncollectible, such may now be reported by the Plaintiff to the IRS as Debt Cancellation Income.

334.    Whereas, if Defendant Sinn is relieved of debt, this is the same as receiving income for tax reporting purposes and the amount should be reported as income on your Form 1040, 1040A or 1040EZ. The IRS requires creditors to report this discharged debt as income on Form 1099-C (Reg §1.61-12 Income from discharge of indebtedness). The IRS runs computer matches of the 1099-CS from the

Plaintiff against tax filings, while finding these tax ramifications against Defendant Sinn.

335.    As a result of the above-referenced gross negligence on part of Defendant Sinn, the Plaintiff has been damaged.

336.    Plaintiff is therefore entitled to damages of $106,742.60

337.    That Said...

---

## COUNT I

## CLAIM FOR RELIEF

## WAGE THEFT

---

338.    Plaintiff incorporates by reference Paragraphs 1-337 of this Complaint as if set forth in full herein.

339.    Plaintiff has performed all duties, promises, and obligations required of Plaintiff and all conditions precedent that Plaintiff agreed to perform in the contracts and agreement between November 2020 and March 2021.

340.    Defendant Sinn has failed to do something essential which the contracts and agreements required them to do, whereas Defendant Sinn failed to fully compensate Plaintiff after Plaintiff and Defendant Sinn mutually assented to a certain and definite proposition' and left no essential terms open. Defendant Sinn, and each of them, breached their oral agreement with the Plaintiff by failing and refusing to perform in good faith their promise to pay the Plaintiff wages owed. As a result of the breach of Defendant Sinn in the obligations pursuant to the oral contracts, the entire sum of $33,150.07 owed from Defendant Sinn, is now due, owing, and unpaid.

341.   Demand has been made on Defendant Sinn for repayment but Defendant Sinn has failed, and refused, and continues to fail and refuse to repay the sum owed to Plaintiff.

342.   Demand has been made on Defendant Sinn for Plaintiff w-2 & w-4 forms, but Defendant Sinn has failed and refused and continues to fail and refuse, to repay the sum owed to Plaintiff.

343.   Defendant Sinn, et al has therefore breached their contracts and agreements with Plaintiff, who has been damaged thereby in the sum of $33,150.07 plus interest at the legal rate from and after the date due according to proof.  (Daily Rate of .0146575% / 5.35% Rate Per Annum.)

344.   Defendant Sinn has failed and refused, and continues to fail and refuse, to compensate Plaintiff

345.   Defendant Sinn's failure and refusal to compensate Plaintiff, constitutes wage theft.

## PRAYER FOR RELIEF
## WAGE THEFT

346.   Plaintiff incorporates by reference Paragraphs 1-347 of this Complaint as if set forth in full herein.

347.   **Wherefore**, Plaintiff respectfully demands a judgment against Defendant Sinn - as Defendant Sinn's acts were abusive, offensive, malicious, fraudulent and oppressive.  Plaintiff prays this Court grant as relief:

a)  an award of uncompensated wages owed $33,150.07

b) an award to recover liquated punitive damages equal to 100 percent $66,300.14; or to be determined at jury trial, which would serve to deter and punish Defendant Sinn from similar unlawful conduct in the future, and;

c) an award to recover liquated compensatory damages equal to 100 percent $66,300.14 of the uncompensated wages owed to compensate the Plaintiff for the time he is without his wages, and;

d) such other and further relief as the court deems just and proper, as Defendant Sinn's acts were abusive, malicious, and oppressive, justifying an award of punitive damages so that Defendant Sinn, et al and each of them will not engage in such conduct in the future and make an example of them;

e) that due to the willful and intentional nature of their conduct, Defendant Sinn be required to *equitably disgorge any and all profits* (inclusive the new valuation of the home) they have made or realized from the services of Plaintiff in order to avoid any unjust enrichment on their part;

f) that because of the exceptional nature of the case and the willful and sophomoric intentional nature of Defendant Sinn's unlawful conduct, and because of Defendant Sinn's wage theft, Plaintiff has suffered general and consequential damages, including but not limited to compensatory damages, pre-judgment interest, and for any and all other relief this Court or Jury may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT II

## CLAIM OF RELIEF

## BREACH OF CONTRACT

350.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 347 as though fully set forth in this cause of action.

351.    In November 2020, the Plaintiff and Defendant Sinn enter into an employment agreement in which Plaintiff agreed to provide services for Defendant Sinn, et al.

352.    Defendant Sinn has shirked his obligation to pay Plaintiff for any of the earned wages for hours worked, materials, skilled workers and labors without compensation - Defendant Sin's acts still remain unlawful, willful, malicious, offensive and oppressive.

353.    Plaintiff and Defendant Sinn entered into an employee employer agreement to pay Plaintiff wages for his work, skilled workers and labors, and materials for the benefits of Defendant Sinn.

354.    Pursuant to the parties' agreement Defendant Sinn agreed to compensate the Plaintiff wages at the terms specified above.

355.    An essential term of the employment agreement was that Defendant Sinn would pay Plaintiff wages according to the terms of said agreements and contracts.

356.    Defendant Sinn has willfully failed to pay Plaintiff wages for worked performed, skilled workers and labors, and materials the benefits of Defendant Sinn,

357.    Plaintiff has been damaged due to Defendant Sinn's willful failure to pay Plaintiff the appropriate agreed upon wages and reimbursements.

358.   Defendant Sinn, owes the Plaintiff $53,371.29 collectively for Plaintiff's wages for hours worked, skilled workers and labors, and materials.

359.   The Plaintiff incurred loss of earned wages for Defendant Sinn's benefits, yet Defendant Sinn willfully fails to pay Plaintiff.

360.   The Defendant Sinn owes the Plaintiff $53,371.29 together with daily interest rate of .0146575% I 5.35% rate per annum.

361.   As a result of the breach of Defendant Sinn, et al and each of them, in the obligations pursuant to the contract, the entire sum of $53,371.29 owed from Defendant Sinn is now due, owing, and unpaid.

362.   Demand has been made on Defendant Sinn for repayment but Defendant Sinn has failed and refused and continue to fail and refuse to repay the sum loaned by Plaintiff.

363.   Defendant has therefore breached his oral contract with the Plaintiff, who has been damaged thereby in the sum of $53,371.29 plus interest at the legal rate from and after the date due according to proof.

364.   Defendant's failure and refusal to convey pay Defendant Sinn constitutes a breach of the agreement described herein.

365.   Because of Defendant Sinn' breach of the agreement described in herein Plaintiff has suffered general and consequential damages,

366.   Plaintiff fulfilled all of his obligations under the agreement.

367.   Defendant materially breached the agreement because of their failure and refusal to pay the Plaintiff which constitutes a breach of the agreement described herein.

368.    As a result of the above-referenced breach the Plaintiff has been damaged.

## PRAYER FOR RELIEF
## BREACH OF CONTRACT

369.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 368 as though fully set forth in this cause of action.

370.    **Wherefore,** Plaintiff respectfully demands a judgment against Defendant Sinn for damages, including, but not limited to compensatory damages, pre judgment interest, and for any and all other relief this court deems just and proper, as Defendant Sinn's acts were malicious, fraudulent and oppressive and that Defendant Sinn forward the Plaintiff $53,371.29 in wages Defendant Sinn illegally maintains, together with daily interest rate of .0146575% / 5.35%.

a)  that due to the willful and intentional nature of their conduct, Defendant Sinn, et al be required to *equitably disgorge any and all profits* they have made or realized from the services of Plaintiff in order to avoid any unjust enrichment on their part;

b)  that Defendant Sinn be assessed punitive damages in an amount to be determined at trial which would serve to deter them from similar unlawful conduct in the future;

c)  that because of Defendant Sinn' unjust, willful, malicious, and oppressive acts, Plaintiff has including but not limited to general, consequential and compensatory damages whereas

d)  such other and further relief as the court deems just and proper, as Defendant Sinn's acts were malicious, fraudulent and oppressive, justifying an award of punitive damages so that Defendant Sinn, et al and each of them will not engage in such conduct in the future and make an example of him;

e)  that because of the exceptional nature of the case and the willful and sinful intentional nature of Defendant Sinn' unlawful conduct, and because of Defendant Sinn' breach of contract, Plaintiff has suffered general and consequential damages, including but not limited to compensatory damages, pre-judgment interest, and for any and all other relief this Court or Jury may deem just and proper;

f)  Legal damages by virtue of Defendant Sinn's actions in the amount of $53,371.29

g)  Legal damages by virtue of Defendant Sinn's actions in the amount of $53,371.29 x 3 = $160,113.87

h)  Fees and costs according to proof.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

---

## COUNT III

## CLAIM OF RELIEF

## UNJUST ENRICHMENT

---

## WAGES

371.  Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 370 as though fully set forth in this cause of action.

372.  Plaintiff gave Defendant Sinn benefits but was not compensated fully for his services and expenditures.

373.    Defendant Sinn has accepted these services and expenditures and never objected to the same.

374.    Plaintiff has been damaged due to Defendant Sinn's willful failure to pay Plaintiff for all of Plaintiffs services or reimbursement for fees advanced by Plaintiff.

375.    Plaintiff has conferred a benefit on Defendant Sinn, who have knowledge thereof.

376.    Defendant Sinn has voluntarily accepted and retained the conferred benefit.

377.    The circumstances are such that it would be inequitable for Defendant Sinn to retain the benefit without paying the value thereof to the Plaintiff.

## INTERNAL REVENUE SERVICE

378.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 377 as though fully set forth in this cause of action.

379.    Defendant was required to collect, truthfully account for, and pay over Plaintiff's tax imposed by the Internal Revenue Code.

380.    Defendants obligations to the Plaintiff and IRS were to withhold Plaintiff's monies owed (federal income taxes and the Plaintiff's portion of Federal Insurance Contributions Act (FICA) taxes) in trust until a federal tax deposit of that amount made (Sloop, 436 U.S. 238 (1978)).

381.    Defendant's withheld federal income payroll taxes (trust fund taxes) from Plaintiff's wages.

382. Moreover, Defendant Sinn, and Defendant Janahn J Sinn intentionally consciously failed to pay over to the IRS federal taxes withheld from employee wages while:

a) failing to make timely federal employment and unemployment tax deposits and payments to the IRS;

b) failing to file timely federal employment and unemployment tax returns;

c) Defendant Sinn and Defendant Janahn J Sinn willfully knew of nonpayment's;

d) Defendant Sinn and Defendant Janahn J Sinn recklessly disregarded whether the payments were being made;

e) Defendant Sinn and Defendant Janahn J Sinn was a responsible person who failed to assess and remedy the payroll tax deficiencies;

f) Defendant Sinn, and Defendant Janahn J has neglected their duty to use all current and future unencumbered funds available to pay those back taxes (Erwin, No. 1:06CV59 (M.D.N.C. 2/5/13));

g) Defendant Sinn and Defendant Janahn J Sinn had the power to compel or prohibit the allocation of funds; (Godfrey, 748 F.2d 1568 (Fed. Cir. 1984);

h) Defendant Sinn and Defendant Janahn J Sinn had the authority to sign payroll checks;

i) Defendant Sinn and Defendant Janahn J Sinn signed payroll checks;

j) Defendant Sinn and Defendant Janahn J Sinn had the authority to make decisions as to disbursement of funds and payment of creditors;

k) Defendant Sinn and Defendant Janahn J Sinn prepared and signs payroll tax returns;

l) Defendant Sinn and Defendant Janahn J Sinn actively participated in day-to-day management, and; Defendant Sinn hired, fired and terminated employees.

383. Due to Defendant Sinn's and Defendant Janahn J Sinn's willful and reckless disregard for the IRS and the Plaintiff, Defendant Sinn and Defendant Janahn J Sinn are liable to the IRS for back taxes, interest penalties and late penalties based upon Defendant Sinn's and Defendant Janahn J Sinn's behavior.

384. Plaintiff is forced to file form 8452 (Substitution for Wage and Tax Statement);

385. Plaintiff is forced to file form 4868 (Application for Automatic Extension);

386. Defendant Sinn's and Defendant Janahn J Sinn's actions of walking away from debt - this is the same as receiving income for tax reporting purposes and the amount should be reported by the Plaintiff as income to the IRS. The IRS requires creditors to report this discharged debt as income (Reg §1.61-12 Income from discharge of indebtedness). The IRS runs computer matches of the from creditors against tax – thus creating tax ramifications.

387. Plaintiff is forced to file form 9465 (Installment Agreement Request).

## PRAYER FOR RELIEF
## UNJUST ENRICHMENT

388. Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 387 as though fully set forth in this cause of action.

389.   **Wherefore** Plaintiff respectfully demands a judgment against Defendant Sinn and Defendant Janahn J Sinn for damages, including, but not limited to compensatory damages, pre judgment interest, and for any and all other relief this court deems just and proper, as Defendant Sinn and Defendant Janahn J Sinn acts were malicious, fraudulent and oppressive;

a)   that Defendant Sinn and Defendant Janahn J Sinn forwards the Plaintiff $33,150.07 in wages Defendant Sinn and Defendant Janahn J Sinn illegally maintains, together with daily interest rate of .0146575% / 5.35% rate per annum;

b)   that Defendant Sinn and Defendant Janahn J Sinn forwards the Plaintiff $18,337.79 for Plaintiff provided skilled workers, labors and materials Defendant Sinn and Defendant Janahn J Sinn illegally maintains, together with daily interest rate of .0146575% / 5.35% rate per annum;

c)   that due to the willful and intentional nature of their conduct, Defendant Sinn and Defendant Janahn J Sinn be required to *equitably disgorge* any, and or all profits they have made or realized from the services of Plaintiff in order to avoid any unjust enrichment on their part;

d)   that Defendant Sinn and Defendant Janahn J Sinn be assessed punitive damages in an amount to be determined at trial which would serve to deter them from similar unlawful conduct in the future;

e)   that because of Defendant Sinn and Defendant Janahn J Sinn unjust, willful, malicious, and oppressive acts, Plaintiff has including but not limited to general, consequential and compensatory damages whereas:

f)   such other and further relief as the court deems just and proper, as Defendant Sinn and Defendant Janahn J Sinn acts were malicious, fraudulent

and oppressive, justifying an award of punitive damages so that Defendant Sinn and Defendant Janahn J Sinn and each of them will not engage in such conduct in the future and make an example of them;

g) that because of the exceptional nature of the case and the willful and intentional nature of Defendant Sinn and Defendant Janahn J Sinn unlawful conduct, and because of Defendant Sinn's and Defendant Janahn J Sinn's breach of contract, Plaintiff has suffered general and consequential damages, including but not limited to compensatory damages, pre-judgment interest, and for any and all other relief this Court or Jury may deem just and proper;

h) Legal damages by virtue of Defendant Sinn and Defendant Janahn J Sinn actions in the amount of $33,150.07

i) Liquidated damages by virtue of Defendant Sinn and Defendant Janahn J Sinn actions in the amount of $18,337.79

j) Fees and costs according to proof.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

---

## COUNT IV

## CLAIM OF RELIEF

## BREACH OF ORAL EMPLOYMENT CONTRACT

---

390. Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 389 as though fully set forth in this cause of action.

391.   Plaintiff and Defendant Sinn entered into an oral employment agreement to pay Plaintiff wages for his work, services, skilled workers & labors, and materials for the benefits of Defendant Sinn.

392.   An essential term of the employment agreement was that Defendant Sinn would pay Plaintiff wages according to the terms of said contracts and agreements.

393.   Defendant Sinn has willfully failed to pay Plaintiff wages for worked performed, skilled workers and labors, and materials for the benefits of Defendant Sinn.

394.   Plaintiff informed Defendant Sinn of the unpaid wages, worked performed, skilled workers and labors, and materials for the benefits of Defendant Sinn and as of this date Plaintiff has not received compensation.

395.   Plaintiff has been damaged due to Defendant Sinn willful failure to pay Plaintiff the appropriate agreed upon wages and reimbursements.

396.   Plaintiff has provided services, skilled workers and labors, and materials for the benefits of Defendant Sinn to Defendant Sinn.

397.   Between November 2020 and March 2021, in Bonita Springs Florida, Plaintiff rendered services, skilled workers and labors, and materials to Defendant Sinn at the special request of Defendant Sinn for which Defendant Sinn, then and there, promised to pay Plaintiff $53,371.29 the reasonable value of such services.

398.   Between November 2020 and March 2021, at Bonita Springs, Florida, Defendant Sinn, became indebted to Plaintiff in the sum of $53,371.29 for rendered services, skilled workers and labors, and materials

399.   No part of the sum wages has been repaid, although payment has been demanded, leaving the balance due, owing, and unpaid to Plaintiffs in the amount of $53,371.29 plus interest at the legal rate from and after March 31, 2021.

400.   Defendant Sinn assented to and received a benefit in the form of services from the Plaintiff under circumstances where, in the ordinary common events, a reasonable person receiving such benefit normally would expect to pay for it.

## PRAYER FOR RELIEF
## BREACH OF ORAL EMPLOYMENT CONTRACT

401.   Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 400 as though fully set forth in this cause of action.

402.   **WHEREFORE,** Plaintiff respectfully demands a judgment against Defendant Sinn for damages, including, but not limited to compensatory damages, pre judgment interest, and for any and all other relief this court deems just and proper, as Defendant Sinn's acts were malicious, fraudulent and oppressive;

403.   Legal damages by virtue of Defendant Sinn's breach of employment contract in the amount of $53,371.29;

together with *treble damages* in the amount of $53,371.29 x 3 = $160,113.87

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT V

## CLAIM OF RELIEF

## QUANTUM MERUIT

404.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 403 as though fully set forth in this cause of action.

405.    Plaintiff provided a benefit in the form of services to Defendant Sinn.

406.    Specifically, Plaintiff services, skilled workers and labors, and materials

407.    for Defendant Sinn.

408.    Defendant assented to and received the services, skilled workers and labors, and materials.

409.    Defendant were aware that Plaintiff expected to be compensated.

410.    Defendant was unjustly enriched thereby.

411.    Defendant was unjustly enriched through depriving the Plaintiff of payment.

412.    Plaintiff is entitled to the reasonable value of his earned income, skilled workers, labors and materials.

### PRAYER FOR RELIEF

### QUANTUM MERUIT

413.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 412 as though fully set forth in this cause of action.

414.    **Wherefore,** Plaintiff respectfully demands a judgment against Defendant Sinn for damages, including, but not limited to compensatory damages, pre

judgment interest, and for any and all other relief this court deems just and proper, as Defendant Sinn's acts were malicious, fraudulent and oppressive;

Legal damages by virtue of Defendant Sinn's actions in the amount of $53,371.29

And or Legal damages by virtue of Defendant Sinn's actions in the amount of $160,113.87:

Fees and costs according to proof.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT VI
## CLAIM OF RELIEF
## PROMISSORY ESTOPPEL

415. Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 414 as though fully set forth in this cause of action.

416. The Defendant Sinn promised to pay the Plaintiff.

417. The Defendant Sinn's promise to pay the Plaintiff for his services and expenditures was clear and unambiguous.

418. As alleged above, Defendant Sinn breached those promises. As alleged above, Plaintiff relied on Defendant Sinn's promises in agreeing to provide services and expenditures to all Defendant Sinn.

419. The Plaintiff allocated the Plaintiffs truck repair & home healthcare monies to provide materials, and workers for the benefit of Defendant Sinn relying on Defendant Sinn's promise to pay the Plaintiff.

420. The Plaintiff's reliance was reasonable and foreseeable.

421. As a direct and proximate result of Defendant's acts as alleged above, Plaintiff has been damaged.

422. The promises of Defendant Sinn proximately caused the following damages to the Plaintiff: severe injury to his emotional trauma, as well as irreparable damage to Plaintiffs health as the Plaintiff was intentionally infected with the COVID-19 disease, and quiet enjoyment of life, and the leased condo the Plaintiff as eviction process is apparent due to Defendant Sinn's immoral actions.

423. Moreover, as result of Defendant actions, the Plaintiff has sought psychiatric counseling, while being diagnosed with a psychiatric condition of depression, anxiety disorder coupled with Plaintiff's issues of sleeplessness, loss of enjoyment of life, failure to thrive, mental anguish, and strained relationships, together with tremendous stress and financial hardships.

## PRAYER FOR RELIEF
## PROMISSORY ESTOPPEL

424. Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 423 as though fully set forth in this cause of action.

425. **Wherefore,** Plaintiff respectfully demands a judgment against Defendant Sinn for damages, including, but not limited to compensatory damages, pre judgment interest, and for any and all other relief this court deems just and proper, as Defendant Sinn's acts were malicious, fraudulent and oppressive;

Legal damages by virtue of Defendant Sinn's actions in the amount of $53,371.29

Medical, Healthcare and Loss of work damages by virtue of Defendant Sinn's actions in the amount of $26,850.00;

Compensatory in the amount of $40,000.00;

General damages in the amount of $40,000.00; and

Punitive damages a in the amount of $180,000.00.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT VII
## CLAIM OF RELIEF
## NEGLIGENCE AND GROSS NEGLIGENCE

426.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 425 as though fully set forth in this cause of action.

427.    Defendant owed a duty to Plaintiff.

428.    Defendant owed Plaintiff the duty to refrain from performing any acts that would negligently, recklessly, wantonly, or willfully injure Plaintiff.

429.    Defendant breached the said duty as described above.

430.    Plaintiff was directly and proximately injured by Defendant Sinn's breaches of said duty to the Plaintiff.

431.    The negligent conduct of Defendant Sinn proximately caused the following damages to Plaintiff: severe injury and emotional trauma.

432. Egregiously, through Defendant Sinn's own admitted gross negligence, fraudulent misrepresentation and willful disregard of the need to use reasonable care – not only placed the Plaintiff in an environment that is unhealthy and deadly - Defendant Sinn harmed the Plaintiff, through Defendant Sinn reprehensible socially irresponsible conduct.

433. Additionally, Defendant Sinn harmed and endangered the Plaintiff's dear friend, and patient in which the Plaintiff is the primary end-of-life care caregiver for; an 82- year old female friend who is unable to ambulate and bedridden due to her progressive Amyotrophic Lateral Sclerosis (ALS) disease. The particularly devastating part of her disease; unlike cancer, with its rare but real remissions - ALS is always fatal.

434. Whereas, Defendant Sinn knowingly and intentionally exposed the Plaintiff to COVID-19 – furthermore, Defendant Sinn knowingly and intentionally infected the Plaintiff with COVID-19 which is derived from SARS-CoV-2 resulting from socially irresponsible conduct of Defendant Sinn.

435. The Defendant Sinn knew or at least reasonably should have known that Defendant Sinn was a carrier of the virus, and had a duty to prevent transmission of COVID-19 to the Plaintiff - which ultimately lead to the infection and hastening of his elderly end-of-life friend.

436. In conclusion, the elements for gross negligence are clear and present. The Defendant Sinn had (1) a duty to the Plaintiff - a duty to prevent transmission of COVID-19; (2) there was a breach of that duty by Defendant Sinn; (3) there is a causal connection between Defendant Sinn's conduct and the harm incurred to the Plaintiff; and (4) the damages in which Plaintiff suffered.

437. This is an unsettling situation that could have easily been avoided, and as such, Defendant Sinn is liable for gross negligence.

438.   Moreover, as result of Defendant Sinn's actions, by knowingly giving the Plaintiff COVID-19, the Plaintiff has sought healthcare, psychiatric counseling, while being diagnosed with a psychiatric condition of depression, anxiety disorder coupled with Plaintiff's issues of sleeplessness, loss of enjoyment of life, failure to thrive, mental anguish, and strained relationships, together with tremendous stress and financial hardships.

439.   Plaintiff provided a benefit in the form of services to Defendant Sinn.

440.   Specifically, Plaintiff services, skilled workers and labors, and materials or Defendant Sinn.

441.   Defendant assented to and received the services, skilled workers and labors, and materials.

442.   Defendant were aware that Plaintiff expected to be compensated.

443.   Defendant was unjustly enriched thereby.

444.   Defendant was unjustly enriched through depriving the Plaintiff of payment.

445.   Plaintiff is entitled to the reasonable value of his earned income, skilled workers, labors and materials.

## PRAYER FOR RELIEF
## NEGLIGENCE AND GROSS NEGLIGENCE

446.   Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 445 as though fully set forth in this cause of action.

447.   **Wherefore,** Plaintiff respectfully demands a judgment against Defendant Sinn for damages, including, but not limited to compensatory damages, pre judgment interest, and for any and all other relief this court deems just and proper.

Legal damages by virtue of Defendant Sinn's actions in the amount of $100,000.00;

Compensatory in the amount of $100,000.00;

General damages in the amount of $100,000.00; and

Punitive damages a in the amount of $200,000.00.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

---

## COUNT VIII

### NEGLIGENT MISREPRESENTATION

---

448.   Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 447 as though fully set forth in this cause of action.

449.   Defendant Sinn, acted negligently, when Defendant Sinn misrepresented facts not known to the Plaintiff at the time and intended for such statements to induce the Plaintiff to act on those false statements.

450.   Defendant Sinn had knowledge as to the truth or falsity of the representation of the promises or ought to have known of its falsity made to Plaintiff.

451.   Defendant Sinn owed a duty to Plaintiff.

452.   Defendant Sinn owed Plaintiff the duty to refrain from performing any acts that would negligently, recklessly, wantonly, or willfully injure Plaintiff.

453. Defendant Sinn breached the said duty as described above.

454. Plaintiff was directly and proximately injured by Defendant Sinn's breaches of said duty to the Plaintiff.

455. The negligent conduct of Defendant Sinn proximately caused the following damages to Plaintiff: severe injury and emotional trauma.

456. Egregiously, through Defendant Sinn's own admitted gross negligence, fraudulent misrepresentation and willful disregard of the need to use reasonable care – not only placed the Plaintiff in an environment that is unhealthy and deadly - Defendant Sinn harmed the Plaintiff, through Defendant Sinn reprehensible socially irresponsible conduct.

457. Additionally, Defendant Sinn harmed and endangered the Plaintiff's dear friend, and patient in which the Plaintiff is the primary end-of-life care caregiver for; an 82- year old female friend who is unable to ambulate and bedridden due to her progressive Amyotrophic Lateral Sclerosis (ALS) disease. The particularly devastating part of her disease; unlike cancer, with its rare but real remissions - ALS is always fatal.

458. Whereas, Defendant Sinn knowingly and intentionally exposed the Plaintiff to COVID-19 – furthermore, Defendant Sinn knowingly and intentionally infected the Plaintiff with COVID-19 which is derived from SARS-CoV-2 resulting from socially irresponsible conduct of Defendant Sinn.

459. The Defendant Sinn knew or at least reasonably should have known that Defendant Sinn was a carrier of the virus, and had a duty to prevent transmission of COVID-19 to the Plaintiff - which ultimately lead to the infection and hastening of his elderly end-of-life friend.

460.    In conclusion, the elements for gross negligence are clear and present.  The Defendant Sinn had (1) a duty to the Plaintiff - a duty to prevent transmission of COVID-19; (2) there was a breach of that duty by Defendant Sinn; (3) there is a causal connection between Defendant Sinn's conduct and the harm incurred to the Plaintiff; and (4) the damages in which Plaintiff suffered.

461.    This is an unsettling situation that could have easily been avoided, and as such, Defendant Sinn is liable for gross negligence.

462.    Moreover, as result of Defendant actions, by knowingly giving the Plaintiff COVID-19, the Plaintiff has sought healthcare,  psychiatric counseling, while being diagnosed with a psychiatric condition of depression, anxiety disorder coupled with Plaintiff's issues of sleeplessness, loss of enjoyment of life, failure to thrive, mental anguish, and strained relationships, together with tremendous stress and financial hardships.

## PRAYER FOR RELIEF
## NEGLIGENT MISREPRESENTATION

463.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 462 as though fully set forth in this cause of action.

464.    **Wherefore,** Plaintiff respectfully demands a judgment against Defendant Sinn for damages, including, but not limited to compensatory damages, pre judgment interest, and for any and all other relief this court deems just and proper.

Legal damages by virtue of Defendant Sinn's actions in the amount of $100,000.00;

Compensatory in the amount of $100,000.00;

General damages in the amount of $100,000.00; and

Punitive damages a in the amount of $200,000.00.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT IX

## FRAUDULENT MISREPRESENTATION

465.   Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 464 as though fully set forth in this cause of action.

466.   Defendant Sinn owed a duty to Plaintiff.

467.   Defendant Sinn owed Plaintiff the duty to refrain from performing any acts that would negligently, recklessly, wantonly, or willfully injure Plaintiff.

468.   Defendant Sinn breached the said duty as described above.

469.   Plaintiff was directly and proximately injured by Defendant Sinn's breaches of said duty to the Plaintiff.

470.   The negligent conduct of Defendant Sinn proximately caused the following damages to Plaintiff: severe injury and emotional trauma.

471.   Egregiously, through Defendant Sinn's own admitted gross negligence, fraudulent misrepresentation and willful disregard of the need to use reasonable care – not only placed the Plaintiff in an environment that is unhealthy and deadly – Defendant Sinn harmed the Plaintiff, through Defendant Sinn reprehensible socially irresponsible conduct.

472.   Additionally, Defendant Sinn harmed and endangered the Plaintiff's dear friend, and patient in which the Plaintiff is the primary end-of-life care caregiver

for; an 82- year old female friend who is unable to ambulate and bedridden due to her progressive Amyotrophic Lateral Sclerosis (ALS) disease. The particularly devastating part of her disease; unlike cancer, with its rare but real remissions - ALS is always fatal.

473.    Whereas, Defendant Sinn knowingly and intentionally exposed the Plaintiff to COVID-19 – furthermore, Defendant Sinn knowingly and intentionally infected the Plaintiff with COVID-19 which is derived from SARS-CoV-2 resulting from socially irresponsible conduct of Defendant Sinn.

474.    The Defendant Sinn knew or at least reasonably should have known that Defendant Sinn was a carrier of the virus, and had a duty to prevent transmission of COVID-19 to the Plaintiff - which ultimately lead to the infection and hastening of his elderly end-of-life friend.

475.    In conclusion, the elements for gross negligence are clear and present. The Defendant Sinn had (1) a duty to the Plaintiff - a duty to prevent transmission of COVID-19; (2) there was a breach of that duty by Defendant Sinn; (3) there is a causal connection between Defendant Sinn's conduct and the harm incurred to the Plaintiff; and (4) the damages in which Plaintiff suffered.

476.    This is an unsettling situation that could have easily been avoided, and as such, Defendant Sinn is liable for gross negligence.

477.    Moreover, as result of Defendant Sinn actions, by knowingly giving the Plaintiff COVID-19, the Plaintiff has sought healthcare, psychiatric counseling, while being diagnosed with a psychiatric condition of depression, anxiety disorder coupled with Plaintiff's issues of sleeplessness, loss of enjoyment of life, failure to thrive, mental anguish, and strained relationships, together with tremendous stress and financial hardships.

478. Plaintiff provided a benefit in the form of services to Defendant Sinn.

479. Specifically, Plaintiff services, skilled workers and labors, and materials for Defendant Sinn.

480. Defendant assented to and received the services, skilled workers and labors, and materials.

481. Defendant were aware that Plaintiff expected to be compensated.

482. Defendant was unjustly enriched thereby.

483. Defendant was unjustly enriched through depriving the Plaintiff of payment.

484. Plaintiff is entitled to the reasonable value of his earned income, skilled workers, labors and materials.

## PRAYER FOR RELIEF
## NEGLIGENT MISREPRESENTATION

485. Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 484 as though fully set forth in this cause of action.

486. **Wherefore,** Plaintiff respectfully demands a judgment against Defendant Sinn for damages, including, but not limited to compensatory damages, pre judgment interest, and for any and all other relief this court deems just and proper.

Legal damages by virtue of Defendant Sinn's actions in the amount of $100,00.00;

Compensatory in the amount of $100,00.00;

General damages in the amount of $100,00.00; and

Punitive damages a in the amount of $100,00.00.

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

---

### COUNT X

### CLAIM FOR RELIEF

### FAIR LABOR STANDARDS ACT

(FLSA, 29 U.S.C. §§ 201 et seq., 29 U.S.C. § 216(b))

---

487. Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 486 as though fully set forth in this cause of action.

488. At all relevant times, Defendant Sinn, employers, employed the Plaintiff within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d), (e)(1), and (g).

489. The business activities of Defendant Sinn are related and performed through unified operation or common control for a common business purpose and constitute an enterprise, within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(r).

490. The enterprise of Defendant Sinn employs employees engaged in commerce or in the production of goods for commerce, or in handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, within the meaning of the Fair Labor Standards Act, 29 U.S.C. § et seg.,

491. Therefore, upon information and belief, at all relevant times, the Plaintiff h as

492. been employed in an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the Fair Labor Standards Act, 29 U.S.C.§ 203(s)(l)(a).

493. The Defendant Sinn willfully and repeatedly violated the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 215(a)(2).

494.    Plaintiff, further seeks damages, as well as an additional amount as liquidated. damages, interest, costs, and reasonable attorney's fees (if any), under the provisions of 29 U.S.C. § 201 et seq., and specifically under the provisions of 29 USC § 206; 29 USC § 207; and 29 USC § 21, moreover the Fair Labor Standards Act (FLSA) et seq., Defendant Sinn violated the Fair Labor Standards Act, 29 U.S.C. §216 ,et seq., and the Defendant Sinn are liable to the Plaintiff for unpaid or underpaid compensation, and such other relief available by law.

495.    Pursuant to the Fair Labor Standards Act § et seg., Defendant Sinn violated the Fair Labor Standards Act, 29 U.S.C. §216, et seq., and Defendant Sinn are liable to the Plaintiff for unpaid or underpaid compensation, and such other relief available by law.

496.    Additionally, pursuant to Fair Labor Standards Act, (FLSA) Sinn violated the FLSA, and Defendant Sinn are liable to the Plaintiff for such other relief available by law.

497.    Together with, pursuant to the Fair Labor Standards Act (FLSA), Defendant Sinn violated the same, and that the Plaintiff should be awarded of Defendant Sinn' statutory damages, injunctive relief, and such other relief available by law.

498.    By 29 U.S.C. § 216(b), Defendant Sinn is liable to the Plaintiff for unpaid and underpaid compensation.

499.    The Plaintiff is further entitled to recover of Defendant Sinn an equal amount as liquidated damages pursuant to the Fair Labor Standards Act, 29 U.S.C.§ 216(b).

500.    The foregoing conduct, as alleged, constitutes a willful violation of the Fair Labor Standards Act within the meaning of the Portal-to-Portal Act, 29 U.S.C.

## PRAYER FOR RELIEF

## FAIR LABOR STANDARDS ACT

501.   Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 500 as though fully set forth in this cause of action.

502.   **Wherefore,** the Plaintiff, on behalf of the Plaintiff and party Plaintiffs, prays this Court grant as relief:

a)  declaratory judgment that the practices complained of herein are unlawful under the Fair Labor Standards Act;

b)  an award of unpaid compensation of $66,300.14 due under the Fair Labor Standards Act;

c)  an award to recover liquated punitive damages equal to 100 percent / $66,300.14 of the uncompensated wages owed to punish and deter Defendant Sinn's from engaging in future wage violations; pursuant to the Fair Labor Standards;

d)  an award to recover liquated compensatory damages equal to 100 percent / $66,300.14 to compensate the Plaintiff for the time he is without his wages;

e)  an award of lost wages compensation due under the Fair Labor Standards Act;

f)  an award to recover liquated punitive damages equal to 100 percent / $66,300.14 of the lost wages owed to punish and deter Defendant Sinn from engaging in future wage violations; pursuant to the Fair Labor Standards Act;

g)  an award to recover liquated compensatory damages equal to 100 percent / $66,300.14 of the lost wages owed to compensate the Plaintiff for the time he is without his wages;

h)  additional legal and equitable relief as may be appropriate to effectuate the

i) purposes of section 215(a)(3) including payment of wages lost an;

j) an additional equal amount as liquidated damages." 29 U.S.C § 216(b).2;

k) find that Defendant Sinn be prosecuted and criminally liable and fined up to the maximum $10,000, under the Fair Labor Standards Act (FLSA);

l) an award to recover statutory damages for Defendant Sinn's 'violation of the Fair Labor Standards Act;

m) a permanent injunction restraining Defendant Sinn, including Defendant Sinn's' officers, agents, employees, and those persons in active concert or participation with Defendant Sinn, from violating the Fair Labor Standards Act;

n) injunctive relief, and such other relief available by law;

o) if liquidated damages pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), are not awarded, an award of prejudgment interest (.0163562% adr/ 5.97% per annum) pursuant to 28 U.S.C. §1961(a) (by);

p) an award of post judgment interest pursuant to 28 U.S.C. § 1961 and/or the F.S §55.03(1)(2);

q) an award of costs, and further expenses, of this action, and; such other and further relief as this Court deems just and proper.

## COUNT XI
## CLAIM FOR RELIEF
## MINIMUM WAGE ACT

503.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 502 as though fully set forth in this cause of action.

504.    Under the provisions of Fair Labor Standards Act ("FLSA") et seg., and Florida laws, specifically under the provisions of Florida Statute § 448.110 et seg.,

together with s. 24, (a) (b) (c) (d) (e) and (f) Art. X of the State Constitution and any such other relief and recovery available by law.

505.    At all relevant times, Defendant Sinn, employers, employed the Plaintiff, within the meaning of the Florida Minimum Wage Act; § 448.110, together with s. 24, Art. X of the State Constitution (1), and that Defendant Sinn violated the Florida Minimum Wage Act § 448.110, and the Defendant Sinn are liable to the Plaintiff for unpaid compensation, and such other relief available by law.

506.    The Defendant Sinn violated the Plaintiff s rights by failing to pay or underpaying the Plaintiff compensation at a rate not less than one and one-half times the Plaintiff s regular rate of pay for the hours the Plaintiff worked in excess of forty per workweek, in violation Florida Minimum Wage Act; § 448.110, together with s. 24, Art. X of the State Constitution.

507.    The Defendant Sinn' failure to pay the Plaintiff the foregoing timely is a violation of Florida Minimum Wage Act; § 448.110, together with s. 24, Art. X of the State Constitution (1).

508.    By Fair Labor Standards Act (FLSA), § 778.100 Defendant Sinn is liable to the Plaintiff for unpaid or underpaid compensation.

509.    The Plaintiff is further entitled to recover of Defendant Sinn liquidated damages pursuant to the Fair Labor Standards Act (FLSA) and Florida Minimum Wage Act.

## PRAYER FOR RELIEF
## MINIMUM WAGE ACT

510.    Plaintiff hereby realleges and incorporates by reference the allegations in paragraphs 1 through 509 as though fully set forth in this cause of action.

511.  Wherefore, the Plaintiff, on behalf of the Plaintiff and party Plaintiffs, prays this Court grant as relief:

a)  a declaratory judgment that the practices complained of herein are unlawful under the Florida Minimum Wage Act; § 448.110, together with section 24, Art. X of the State Constitution (c), (d), and e)

b)  an award of unpaid  or underpaid  compensation, due under the Florida Minimum Wage Act; § 448.110, together with s. 24, Art. X of the State Constitution (a) thru (e);

c)  an award to recover liquated punitive damages equal to 100 percent / $66,300.14 of the uncompensated wages owed to punish and deter Defendant Sinn's from engaging in future wage violations, pursuant to the Florida Minimum Wage Act and the Florida Constitution, together with any such other relief available by law;

d)  an award to recover liquated compensatory damages equal to 100 percent / $66,300.14 of the uncompensated wages to compensate the Plaintiff for the time he is without his wages, pursuant  to the Florida Minimum Wage Act and the  Florida Constitution, together with any such other relief available  by law; an award to recover  statutory  damages  for  Defendant Sinn' violation  of the Florida Minimum Wage Act and the Florida Constitution.

e)  a permanent injunction restraining Defendant Sinn, including Defendant Sinn' officers, agents, employees, and those persons in active concert or participation with Defendant Sinn, from violating the Florida Minimum Wage Act and the Florida Constitution;

f) if liquidated damages pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), are not awarded, an award of prejudgment interest (.0163562% 5.97% per annum) pursuant to 28 U.S.C. §1961(a) (b);

g) an award of post judgment interest pursuant to 28 U.S.C. § 1961 and/or the F.S §55.03(1)(2); an award of the attorney's fees (should Plaintiff hire attorneys), costs, and further expenses, of this action, pursuant to 29 U.S.C. § 216(b).

h) together with any such other relief available by law;

Respectfully submitted,

Dated this 7th day of September, 2021

S/ Craig Bradley Patterson
CRAIG BRADLEY PATTERSON
158 Mahogany Drive
Naples, Florida 34108
c.bradley@cbradleycorp.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY Pursuant to Fla. R. Civ. P. 1.080, that I electronically filed the foregoing with The United States District Court for the Middle District of Florida by using the PACER Courts E-Filing Portal (CM/ECF/NextGen/ CurrentGen.) on the date hereof.

Participants in the case who are either (1) registered CM/ECF/NextGen/ CurrentGen. users, and/or identified within the electronic service list as (2) service recipients and/or (3) interested parties may have received a true and correct copy of the same by means of the CM/ECF/NextGen/ CurrentGen. portal.

I further certify that if participants in the case are not registered CM/ECF/NextGen/ CurrentGen. users, or identified within the electronic service list as service recipients or interested parties, and require service, I have mailed a true and correct copy of the foregoing by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non- CM/ECF/NextGen/ CurrentGen. users' participants: None

Respectfully submitted,

Dated this 7th day of September, 2021

S/ Craig Bradley Patterson
CRAIG BRADLEY PATTERSON
158 Mahogany Drive
Naples, Florida 34108
c.bradley@cbradleycorp.com

Interested Parties
Shahid Khan
(202) 747-5797
shahid.khan@quarlesbradyllc.com

David M. Rothenstein
(202)330-0353
david.m.rothenstein@bakermckenziepllc.com